**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Anthony ASKEW, Appellant.**

Superior Court of Pennsylvania.

Submitted May 30, 2006.

Filed Aug. 30, 2006.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: HUDOCK, LALLY–GREEN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Anthony Askew, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County. In addressing his claims, we examine, *inter alia,* the interaction between Pa.R.Crim.P. 704, which concerns motions for extraordinary relief, and the sexually violent predator (SVP) hearing mandated by Megan's Law II.[1] We affirm.

1. 42 Pa.C.S.A. §§ 9791–99.

¶ 2 Appellant pleaded *nolo contendre* to aggravated indecent assault,[2] involuntary deviate sexual intercourse,[3] corrupting the morals of a minor,[4] and simple assault[5] after he molested a three year-old girl whom his girlfriend was babysitting. Pursuant to Megan's Law II, the trial court deferred sentencing pending a hearing to determine whether Appellant was a sexually violent predator as that term is defined in the statute. Prior to the hearing, Appellant filed a motion for extraordinary relief challenging the constitutionality of Megan's Law II, which was denied. At the SVP hearing, the Commonwealth's psychologist testified to a diagnosis of a personality disorder with pedophilic features, citing Appellant's previous conviction for the sexual assault of another three year-old, an aggravated assault of an eight year-old boy, and two previous diagnoses of personality disorder. The court held that the instant conviction met the statutory definition of a predatory offense and found Appellant to be a sexually violent predator. The court then imposed a sentence of six to twelve years' imprisonment to be followed by eight years' probation, and ordered Appellant to comply with the Megan's Law II registration requirements for sexually violent predators. This timely appeal followed.

¶ 3 Appellant raises issues for our review which may be summarized as follows:

**2.** 18 Pa.C.S.A. § 3125.

**3.** 18 Pa.C.S.A. § 3123.

**4.** 18 Pa.C.S.A. § 6301.

**5.** 18 Pa.C.S.A. § 2701.

**6.** This issue represents an amalgam of multiple constitutional challenges raised in Appellant's Statement of the Questions Involved, namely 1) whether the Wetterling Act insulates the statute from challenge; 2) whether the legislature was entitled to adopt a rule of

Whether the issues before this Court are ripe for review?

Whether Megan's Law II registration, notification, and counseling requirements constitute criminal punishment where no reasonable mechanism is provided for reevaluation of sexually violent predator status after the initial hearing? If so, whether the statutorily mandated post-conviction procedure violates procedural due process and double jeopardy?[6]

·Whether the evidence was sufficient to establish that Appellant was a "sexually violent predator" pursuant to Megan's Law II, inasmuch as the Commonwealth did not present proof at the Megan's law hearing sufficient to establish that Appellant possessed a "mental abnormality" or "personality disorder" necessary to confer sexually violent predator status?

¶ 4 Preliminarily, we address whether Appellant properly preserved his constitutional challenges on appeal to this Court. Appellant's first issue on appeal defends these challenges as ripe for review, arguing that the motion for extraordinary relief challenged the hearing's process and not simply its result. He claims that the motion was properly filed before his Megan's Law hearing because he "was actually faced with adjudication as a sexually violent predator." (Appellant's Brief at 11). As such, Appellant insists, the issue was

universal application for all sexually violent predators; 3) whether the provisions constitute punishment; 4) whether the limits on judicial reconsideration for public notification are excessive; 5) whether a defendant is entitled to trial by jury and proof beyond a reasonable doubt in the Megan's Law hearing; 6) whether the Megan's Law hearing violates protections against double jeopardy; and 7) whether enactment of the law violated Pennsylvania's constitutional prohibition against bills that contain more than one subject.

properly preserved for appeal. We disagree.

■ ¶ 5 Pa.R.Crim.P. 704 provides in relevant part:

**(B) Oral Motion for Extraordinary Relief.**

(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an **oral** motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

(3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

Pa.R.Crim.P. 704(B) (emphasis added).[7] The comment to the rule clarifies that "a motion for extraordinary relief is neither necessary nor sufficient to preserve an issue for appeal." Pa.R.Crim.P. 704(B)(3), *comment.* This Court has consistently held that we will not allow such motions as a "substitute vehicle" for raising a matter that should be raised in a post-sentence motion. *Commonwealth v. Howe,* 842 A.2d 436, 441 (Pa.Super.2004) (quoting *Commonwealth v. Celestin,* 825 A.2d 670, 674 (Pa.Super.2003), *appeal denied,* 577 Pa. 686, 844 A.2d 551 (2004)).[8] Rule 704

makes clear that Appellant's pre-sentence motion alone was neither necessary nor sufficient to preserve the issue for appeal to this Court. *See* Pa.R.Crim.P. 704(B)(3), *comment.* As noted, Appellant filed no post-sentence motion. Based on this error, we are compelled to find Appellant's constitutional claims waived. *See Celestin, supra.*

¶ 6 Appellant avers that Rule 704 is not applicable because the Megan's Law hearing is not part of the trial or sentencing. Appellant claims that Rule 704 does not govern appeals challenging the SVP hearing, but rather applies only to appeals regarding the trial or sentencing. Appellant also argues that waiting until after the hearing to raise motions might constitute an admission that the hearing did not constitute a separate trial, and thus did not violate double jeopardy. Rule 704, however, specifically declares that any motion for extraordinary relief must be preserved *via* a post-trial motion. *See* Pa.R.Crim.P. 704(B)(3). Under the rule, Appellant's motion for extraordinary relief was insufficient to preserve the issue for appeal. This is true whether the motion concerns the trial, the SVP hearing, or both. *See Howe, supra.* Rather than conceding the absence of double jeopardy, raising the claims of unconstitutionality in a post-sentence motion would have preserved them. *See id.*

---

**7.** We note that Rule 704 does not permit the filing of a written motion for extraordinary relief before sentencing. *Howe, supra;* Pa.R.Crim.P. 704(B)(1). Pa.R.Crim.P. 704 does not expressly prohibit written motions for extraordinary relief, although this Court has previously noted that such motions are not proper. *Howe, supra.* Here, Appellant did file a written motion for extraordinary relief prior to both the SVP hearing and sentencing. The trial court heard argument on the motion and denied it. While we do not address the propriety of the trial court's review, we note that this Court has previously held that such a

hearing, when the motion technically did not comply with Rule 704, was "misplaced and clearly disallowed by the Rules of Criminal Procedure." *See id.*

**8.** Although the *Howe* Court noted that failure to file a post-trial motion would not preserve the issue, because in that case the appellant did file such a motion, the court addressed the merits of his claims. *Id.* However, Appellant here did not preserve the issue in a post-trial motion. *See id.*

¶7 Moreover, Appellant's constitutional claims merely require us to revisit issues that have already been decided. Since constitutional challenges are questions of law, our review is plenary. *Id.* However, a law is presumed to be constitutional unless it "clearly, palpably, and plainly violates the constitution;" thus the party challenging the statutes bears "a heavy burden of persuasion." *Id.* Appellant avers that the provisions of Megan's Law II requiring lifetime registration of sexually violent predators are both punitive and excessive, since the law lacks a process for reevaluating an offender's status as a sexually violent predator and defines the term "sexually violent predator" only vaguely. However, our Supreme Court has previously considered this challenge and held that the requirements of Megan's Law do not constitute punishment. *See Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962 (2003), *appeal denied,* 586 Pa. 770, 895 A.2d 1261 (2006). In fact, the Court has specifically found that the requirements "are not sufficiently onerous to qualify as punishment based upon alleged excessiveness." *Id.* at 982.[9] The Court held that the Legislature did

not intend Megan's Law II as punishment, and examination the seven factors outlined by the U.S. Supreme Court in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963),[10] led the Court to conclude that the statute is non-punitive. *Id.* at 972–73. We therefore reiterate the holding of *Williams,* that the registration, notification, and counseling requirements of Megan's Law II do not constitute punishment.

¶8 Appellant also claims that the statute is unconstitutionally vague and that legislative enactment of the law violated the Pennsylvania Constitution by "containing more than one subject." *See* Pa. Const. art. 3, § 3. This Court has considered and rejected both claims. *See Howe, supra* at 443–44, 447. In addition, since we would conclude that Megan's Law II is constitutional, we would have no need to resolve Appellant's claim regarding whether the Wetterling Act [11] provides a constitutional shield for the Commonwealth. As already noted, Appellant also argues that the statute lacks a reasonable mechanism for review of sexually violent predator status, and that, for multiple reasons, the hearing violates double jeopardy and procedural

9. Appellant claims that *Williams* leaves unresolved the issue of whether the lifetime registration, notification, and counseling requirements for sexually violent predators are excessive because there is no possibility of subsequent review. (Appellant's Brief at 20). Nevertheless, both the Supreme Court and this Court have applied *Williams* and held that these requirements of Megan's Law II do not constitute punishment. *See e.g. Commonwealth v. Maldonado,* 576 Pa. 101, 838 A.2d 710 (2003); *Commonwealth v. Kopicz,* 840 A.2d 342 (Pa.Super.2003). We also note that the Supreme Court has indicated that the absence of subsequent review would not be dispositive in determining whether the statute as a whole was excessive. *See Maldonado, supra* at 717.

10. The factors given in *Mendoza–Martinez* to determine if a civil, remedial mechanism con-

stitutes punishment are: 1) whether it involves an affirmative disability or restraint; 2) whether it has historically been regarded as punishment; 3) whether it comes into play only on a finding of scienter; 4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; 5) whether the behavior to which it applies is already a crime; 6) whether an alternative purpose to which it may rationally be connected is assignable for it; and 7) whether it appears excessive. *Williams, supra* at 973.

11. The regulations implementing the Jacob Wetterling Act, 64 Fed.Reg. 572, 574–75 (1999) interpreting 42 U.S.C.S. § 14071(b)(6)(B)(iii), provide that those deemed sexually violent predators must register for life, and states may not terminate this mandate based upon a finding of rehabilitation.

due process. These arguments, however, rest on the rejected assumption that the statutory obligations imposed on sexually violent predators constitute criminal punishment.

■ ¶ 9 Appellant's final argument challenges the sufficiency of the evidence to prove that he is a sexually violent predator.[12] He contends that the Commonwealth did not establish that he possessed a "mental abnormality" or "personality disorder" because his diagnosis did not preclude the possibility that the disorder might be genetic, rather than acquired or congenital. He also challenges his diagnosis as too vague to fall within the ambit of the statute. However, we disagree with Appellant's claims.

■ ¶ 10 In evaluating a challenge to the sufficiency of evidence, "[w]e must determine 'whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses.'" *Commonwealth v. Snyder*, 870 A.2d 336, 346 (Pa.Super.2005) (quoting *Commonwealth v. Meals*, 842 A.2d 448, 450 (Pa.Super.2004), *appeal granted*, 583 Pa. 661, 875 A.2d 1074 (2005)). Megan's Law II provides that the trial court " 'shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator.'" *Id.* (quoting 42 Pa.C.S.A. § 9795.4(e)(3)). To deem an individual a sexually violent predator, the Commonwealth must first show he "has been convicted of a sexually violent offense as set forth in section 9795.1." *See* 42 Pa.C.S.A. § 9792. Here, Appellant pleaded *nolo contendere* to ag-

gravated indecent assault and involuntary deviate sexual intercourse, both of which are listed in section 9795.1. *See* 42 Pa. C.S.A. § 9795.1 Thus, this first element is satisfied. Secondly, the Commonwealth must show that the individual has "a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses." *See* 42 Pa.C.S.A. § 9792. The following factors should be considered:

(1) Facts of the current offense, including:
  (i)   Whether the offense involved multiple victims.
  (ii)  Whether the individual exceeded the means necessary to achieve the offense.
  (iii) The nature of the sexual contact with the victim.
  (iv)  Relationship of the individual to the victim.
  (v)   Age of the victim.
  (vi)  Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
  (vii) The mental capacity of the victim.
(2) Prior offense history, including:
  (i)   The individual's prior criminal record.
  (ii)  Whether the individual completed any prior sentences.
  (iii) Whether the individual participated in available programs for sexual offenders.
(3) Characteristics of the individual, including:
  (i)   Age of the individual.

---

**12.** Rule 606 preserves for review sufficiency of the evidence claims raised orally before sentencing or on appeal. Pa.R.Crim.P. 606(A)(5), (7). Appellant raised his sufficien-cy claim in a pre-sentence oral motion, and raised it again in his Rule 1925(b) statement. Therefore, this issue is properly before us. *See id.*

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender

(i) assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).

¶ 11 The Commonwealth relied on the testimony of Dr. Steven Samuel, an expert in the field of sexual offender treatment and evaluation, to establish its case. Dr. Samuel testified that in his opinion, Appellant "meets the criteria to be classified as a sexually violent predator." (N.T. Megan's Law Hearing, 1/11/05, at 13). Asked whether Appellant possessed a mental disorder or mental abnormality as required by Section 9792, Dr. Samuel "diagnosed him as having personality disorder not otherwise specified with antisocial and pedophilic features." (*Id.*). As to the second factor required by the statute, Dr. Samuel testified that "[Appellant's] behavior was, in my opinion, predatory." (*Id.* at 14). This opinion was based on the circumstances surrounding the crime, including the fact that the victim was three years old and a stranger to Appellant; Appellant's history, including his prior convictions for sexually molesting another three year-old and aggravated assault against an eight year-old; and Appellant's previous diagnoses of a personality disorder. Viewing this testimony in the light most favorable to the Commonwealth, we find that it establishes clearly and convincingly the requirements for a sexually violent predator. *See Snyder, supra.*

¶ 12 The Commonwealth need not prove that Appellant's condition does not arise from a genetic cause, as Appellant asserts. Although the statute defines "mental abnormality" as a "congenital or acquired condition," it does not provide that genetic and congenital factors are mutually exclusive. *See* 42 Pa.C.S.A. § 9792. In fact, Appellant's own definition concedes that "congenital" factors "may or may not be genetic." (Appellant's Brief at 60). In addition, since Section 9792 provides that proof of sexually violent predator status requires "a mental abnormality or personality disorder," Dr. Samuel's testimony diagnosing Appellant with a personality disorder is sufficient. *See* 42 Pa.C.S.A. § 9792 (emphasis added). Appellant's second argument, that the diagnosis was too vague to support the statute, is also misguided. Dr. Samuel, who Appellant stipulated was an expert in the field of sexual offender evaluation and treatment, stated unequivocally that Appellant's personality disorder met the statutory requirement for a sexually violent predator. (*See* N.T. at 13). As we view the evidence in the light most favorable to the Commonwealth, we find that the expert diagnosis clearly met the statutory criteria for designating Appellant as a sexually violent predator. *See Snyder, supra.*

¶ 13 Judgment of sentence affirmed.

¶ 14 LALLY–GREEN, J. files a Concurring Statement.

### CONCURRING STATEMENT BY LALLY–GREEN, J.:

¶ 1 I agree with the highly regarded Majority that Appellant waived his challenge to the constitutionality of Megan's Law by failing to raise that challenge in post-sentence motions. *Commonwealth v. Howe*, 842 A.2d 436, 440–441 (Pa.Super.2004). A motion for extraordinary relief is an improper and inadequate substitute for a post-sentence motion. *Id.; Pa.*

R.Crim.P. 704(B)(3). Such a motion has no effect on waiver or preservation of issues. *Id.* Because Appellant did not raise his constitutional challenge in a post-sentence motion or in any proper manner before sentencing, the issue is waived. As such, I would not address the merits, as the Majority does.

¶ 2 I also observe that Appellant may challenge the sufficiency of the evidence supporting his SVP determination for the first time on appeal. Rule of Criminal Procedure 606(A)(7) provides that a defendant may challenge, for the first time on appeal, "the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged." This Court has applied that same rule to SVP determinations.[13] *See, e.g., Commonwealth v. Krouse,* 799 A.2d 835 (Pa.Super.2002) *(en banc), appeal denied,* 573 Pa. 671, 821 A.2d 586 (2003); *Commonwealth v. Meals,* 842 A.2d 448 (Pa.Super.2004), *appeal granted,* 583 Pa. 661, 875 A.2d 1074 (2005). In other words, this Court has not required defendants to challenge the sufficiency of the SVP evidence in a post-sentence motion. *See Commonwealth v. Evans,* 2006 PA Super 132, 901 A.2d 528; *Commonwealth v. Snyder,* 870 A.2d 336 (Pa.Super.2005); *Commonwealth v. Plucinski,* 868 A.2d 20 (Pa.Super.2005). Thus, I agree with the Majority's conclusion that the sufficiency issue is not waived. I also agree with the Majority's conclusion that clear and convincing evidence supported Appellant's SVP classification.

---

13. This is true even though SVP determinations do not relate to the sufficiency of the evidence for the underlying crime.