J-S02036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN ANTHONY FRAME | |
| Appellant | No. 1001 EDA 2014 |

Appeal from the Judgment of Sentence of March 3, 2014
In the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0000774-2013

BEFORE: MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:          **FILED FEBRUARY 04, 2015**

Brian Frame appeals the trial court's determination that Frame is a sexually violent predator ("SVP"), and, as such, subject to lifetime registration and reporting requirements pursuant to Pennsylvania's Sex Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10, *et seq*. ("SORNA" or "the Act"). Frame contends that the Commonwealth failed to prove by clear and convincing evidence that Frame qualified for that designation based upon the statute's multifactorial analysis. We adopt the trial court's analysis and affirm.

In open court at the time that it entered its decision, the trial court provided the following account of the facts underlying Frame's convictions that led to his classification as an SVP:

> The victims will be referred [to] by me as the older victim and younger victim. [Frame] first contacted the older victim through

the social Internet program SKOUT in April, 2011. That victim told [Frame that victim] was 15 years old. So [Frame] knew the that the victim was underage when they first started texting. And [Frame] commented about him being young. Phone numbers were exchanged, and they texted back and forth for several months. They met in June of 2011 at a park when the victim texted [Frame] that he was upset. They sat in [Frame's] car.

[Frame] initiated sexual behavior by placing his hands, the victim's hands, over [Frame's] penis. [Frame] then suggested oral sex and they engaged in oral sex.

The victim was 15 at the time.

The next crimes charged occurred on New Year's Day, 2013. Both victims were together on that date in Quarryville. The older victim was 16 and the younger victim was 13. [Frame] asked them to send him a picture of their penis[es], which they did via cell phone. [Frame] drove to Quarryville, picked up both victims, and drove them to his house. There he gave them several cups of wine while they watched YouTube, then he took them to the bathroom where he shaved the older victim's genital area with an electric razor. The three then showered together. He digitally penetrated the younger victim's anus. . . .

After showering, the three got into [Frame's] bed. [Frame] lubricated his penis and masturbated. After this, he performed oral sex on the younger victim while the older victim performed oral sex on [Frame]. Following that, [Frame] inserted his penis into the younger victim's anus.

The victim told him to take it out because it hurt really bad. The younger victim could hardly walk due to the pain. [Frame] then drove the victims home.

Notes of Testimony ("N.T."), 2/26/2014, at 8-10.

On August 14, 2013, Frame entered a negotiated guilty plea to one count of involuntary deviate sexual intercourse of a person less than sixteen years old, 18 Pa.C.S. § 3123(a)(7), one count of statutory sexual assault, 18 Pa.C.S. § 3122.1(b), and two counts of corruption of the morals of a minor,

18 Pa.C.S. § 6301(a)(1). At the conclusion of the guilty plea hearing, the trial court entered an order directing the Sexual Offender Assessment Board ("SOAB") to perform an assessment of Frame pursuant to 42 Pa.C.S. § 9799.24 to determine whether Frame is an SVP. On October 25, 2013, after SOAB board member Bruce Mapes, Ph.D., conducted his assessment based upon the documentary record and without meeting with Frame, he notified the trial court that Frame met the SVP criteria. During the interim, Frame also sought the assessment of Elliot Atkins, Ph.D., who disagreed with Dr. Mapes' conclusions.

On January 8, 2014, and February 6, 2014, the trial court held evidentiary hearings. Dr. Mapes, a licensed forensic psychologist, was admitted as an expert in the field of forensic psychology and the assessment and treatment of sex offenders, testified in support of his finding that Frame was an SVP. Dr. Atkins, a forensic psychologist admitted as an expert in the same areas, testified contrarily. On February 26, 2014, the trial court determined that Frame was an SVP pursuant to 42 Pa.C.S. § 9799.24(c)(3). In support of its determination, the trial court offered a lengthy on-the-record recital of its findings relative to each of the fourteen factors set forth

in subsection 9799.24(b). On March 27, 2014, Frame filed a timely notice of appeal.[1]

Frame presents the following issue for our review: "Whether the lower court erred by finding that the Commonwealth proved by clear and convincing evidence that [Frame] is [an SVP] despite the Commonwealth presenting insufficient evidence to declare [Frame] an SVP?" Brief for Frame at 4.

Our scope and standard of review, as well as the legal framework governing SVP determinations, are as follows:

> A challenge to a determination of SVP status requires us to view the evidence:
>
>> [I]n the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue.
>
> *Commonwealth v. Plucinski*, 868 A.2d 20, 25 (Pa. Super. 2005) (internal citations and quotation marks omitted). The scope of review is plenary. *Commonwealth v. Brooks*, 7 A.3d 852 (Pa. Super. 2010). "[A]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence." *Commonwealth v. Fuentes*, 991 A.2d 935, 944 (Pa. Super.) (*en banc*) . . . .
>
> A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the

_____

[1] The trial court did not direct Frame to file a concise statement of the errors complained of on appeal, but the court has provided a detailed opinion pursuant to Pa.R.A.P. 1925(a).

undiminished record of the case in the light most favorable to the Commonwealth. ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006). The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. ***Commonwealth v. Baker***, 24 A.3d 1006, 1035 (Pa. Super. 2011). A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing. ***Commonwealth v. Sanford***, 863 A.2d 428, 431 (Pa. 2004) (distinguishing concepts of sufficiency of evidence versus admissibility of evidence, but refusing to render any opinion on whether SVP expert's "reliance on the affidavit of probable cause and the charging documents somehow rendered her testimony inadmissible as this issue is not before this court").

* * * *

Our task . . . is one of review, not one of reweighing or assessing the evidence in the first instance. ***Meals***, 912 A.2d at 223.

 "After conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S.A. § 9799.24(a). [Subs]ection 9799.24(b) provides:

§ 9799.24. Assessments

* * * *

(b) Assessment.—Upon receipt from the court of an order for an assessment, a member of the board . . . shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii)   The nature of the sexual contact with the victim.

(iv)   Relationship of the individual to the victim.

(v)   Age of the victim.

(vi)   Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii)   The mental capacity of the victim.

(2)   Prior offense history, including:

(i)   The individual's prior criminal record.

(ii)   Whether the individual completed any prior sentences.

(iii)   Whether the individual participated in available programs for sexual offenders.

(3)   Characteristics of the individual, including:

(i)   Age.

(ii)   Use of illegal drugs.

(iii)   Any mental illness, mental disability or mental abnormality.

(iv)   Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

∗ ∗ ∗ ∗

42 Pa.C.S.A. § 9799.24(b).  An SOAB board member conducts the assessment to determine if the individual should be classified as an SVP.  *Id.*   The SOAB merely assesses the defendant; it does not perform an adjudicative function. ***Commonwealth v. Kopicz****,* 840 A.2d 342, 351 (Pa. Super. 2003).   The statute dictates the factors for the expert to consider when making an SVP analysis:

> [T]he "science" here (and the SVP designation consequences it triggers) is responsive to, indeed it is a direct byproduct of, a specific legislatively-adopted scheme which sets forth the relevance and contours of the challenged evidence. The General Assembly has determined that a sexual offender's SVP status is significant to the operation of the registration and notification provisions of the law. The Assembly has defined the triggering term ("sexually violent predator") and has set forth the factors to be considered in making that determination. This scheme represents a legislative policy judgment concerning the proper response to certain sexual offenders. The question of SVP status is thus a statutory question, . . . and, at least in the absence of a challenge to the propriety of the substance of the statute, the question of evidentiary relevance is framed by the very provisions of the statute itself, not some external source.

***Dengler****,* 890 A.2d at 383 (holding: "Because the legislature provided the framework for assessing whether an offender is an SVP, expert testimony tracking that framework, by definition, should be deemed generally accepted in the community of professionals who conduct SVP assessments. . . ."). Therefore, the salient statutory inquiry for SVP designation:

> [I]s identification of the impetus behind the commission of the offense; that is, whether it proceeds from a mental defect/personality disorder or another motivating factor. The answer to that question determines, at least theoretically, the extent to which the offender is likely to reoffend, and [S]ection [9799.24] provides the criteria by which such likelihood may be gauged. ***Plucinski***, *supra* at 26.

"To deem an individual a sexually violent predator, the Commonwealth must first show [the individual] 'has been convicted of a sexually violent offense as set forth in [section 9799.14] . . . .'" ***Commonwealth v. Askew****,* 907 A.2d 624, 629 (Pa. Super. 2006); ***see also*** 42 Pa.C.S.A. § 9799.12. "Secondly, the Commonwealth must show that the individual has 'a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses.'" ***Askew****, supra.* When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP. ***Kopicz****, supra.*

An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment. *Commonwealth v. Howe*, 842 A.2d 436, 445-46 (Pa. Super. 2004). SVP status, therefore, does not require proof beyond a reasonable doubt; the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP. *Commonwealth v. Killinger*, 888 A.2d 592, 600 (Pa. 2005).

*Commonwealth v. Prendes*, 97 A.3d 337, 355-58 (Pa. Super. 2014) (citations modified; footnote omitted).

The only issue presented concerns the adequacy of the Commonwealth's proof to the effect that Frame qualified as an SVP. The trial court aptly framed the inquiry as follows:

An individual is not automatically found to be a sexually violent predator upon conviction of a sexual offense. *Commonwealth v. Lipphardt*, 841 A.2d 551, 558 (Pa. Super. 2004). The relevant inquiry is whether [Frame] suffers from a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. 42 Pa.C.S. § 9799.12.

A mental abnormality under the Act is defined as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S. § 9799.12. Predatory is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

\* \* \* \*

[J]ust because a testifying Board member is found to be credible, does not necessarily lead to the conclusion that the Commonwealth has proved by clear and convincing evidence all the elements for a sexually violent predator classification. *Lipphardt*, 841 A.2d at 555-56 (citing *Commonwealth v.*

- 8 -

> ***Krouse***, 799 A.2d 835, 840 (Pa. Super. 2002)).  The court must consider the assessment factors listed in 42 Pa.C.S. § 9799.24(b) and determine the likelihood that a defendant will commit another offense based upon these factors.  ***Krouse***, 799 A.2d at 843.

Trial Court Opinion, 5/14/2014, at 4-5 (citations modified).

Frame's argument largely reduces to the contention that Dr. Mapes' assessment on behalf of SOAB was based upon the psychological diagnoses that Frame was affected by paraphilia NOS with pedophilia features.[2] According to Frame, because this diagnosis "cannot be supported by the psychological community," Brief for Frame at 13, and because the diagnosis was a necessary premise to Dr. Mapes' assessment that Frame suffered from a mental abnormality or personality disorder that predisposed Frame to commit sexually violent offenses in the future, that assessment was infirm.

Specifically, Frame contends that "Dr. Mapes' diagnosis of pedophilia features is unfounded."  ***Id.***  As Frame acknowledges, Dr. Mapes' diagnosis of pedophiliac tendencies was based upon the age of the younger victim,

---

[2] "According to the Diagnostics and Statistics Manual—IV—TR ["DSM—IV"], '[t]he essential features of a Paraphilia are recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons that occur over a period of at least six months.'"  ***United States v. Graham***, 683 F.Supp.2d 129, 135 (D. Mass. 2010).  Among the eight separate paraphilia diagnoses recognized by the DSM—IV is pedophilia, "deviant arousal to prepubescent children."  ***Id.***  However, for every diagnosis in the DSM—IV there exists a separate category for "NOS," or Not Otherwise Specified, to enable "coding Paraphilias that do not meet the criteria for any of the specific subcategories" of a given diagnosis.  ***Id.*** at 136.

with thirteen years of age recognized as the cut-off age for a pedophilia diagnosis, and Frame's interest in shaving the older victim's genitals. *Id.* at 14. Frame contends that the age cutoff "is an arbitrary number when it comes to this case," and argues that Dr. Atkins' own proposed criterion, that the distinction lies in whether the particular victim is pre- or post-pubescent, should conclusively govern this case. *Id.* Because the younger victim was unshaved when Frame engaged in sexual activity with him, Frame maintains, the trial court should not have accepted Dr. Mapes' diagnosis.

With regard to paraphilia NOS, Frame argues that Dr. Mapes based this NOS diagnosis upon Frame's putative interest in children who could not give informed consent spanning greater than six months. Frame contends that Dr. Mapes failed to provide any evidence to support this premise, fatally undermining the diagnosis and the SVP designation that followed. Frame contrasts Dr. Mapes' analysis with Dr. Atkins' contrary observations.

What becomes clear in parsing Frame's arguments is that his challenge bears at least as many hallmarks of a challenge to the fact-finder's weighing of the evidence as it does to a sufficiency challenge. In either event, our standard requires us to defer to the trial court's findings of fact to the extent that they find support in the record. *See Prendes*, 97 A.3d at 355-56. We find that the trial court's determination that Frame is an SVP was supported by sufficient evidence.

Rather than recite at length the evidence in question, we adopt as our own the trial court's opinion as supplemented by the court's lengthy on-the-

record review of evidence and of his findings, which reflect findings of fact for which the record furnishes ample support. The court's discussion can be found in the February 26, 2014 notes of testimony at pages three through twenty-four. The trial court's opinion and the relevant excerpts of the trial court's in-court discussion of the bases for its determination are attached hereto for ease of reference.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2015

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs

: CRIMINAL ACTION

BRIAN ANTHONY FRAME : NO. 774-13

: SUPERIOR COURT NO. 1001 EDA 2014

Priya DeSouza, Esquire, Attorney for the Commonwealth.
Mitchell Baylarian, Esquire, Attorney for the Defendant.

### STATEMENT OF THE COURT

An appeal having been taken, pursuant to Pa.R.A.P. 1925(a), the following

statement is submitted.

Defendant was charged with the following concerning two juvenile male victims,

one 13 year old and one 16 year old:

- one count of involuntary deviate sexual intercourse, in violation of 18 Pa.C.S.A. §3123(a)(7);
- one count of statutory sexual assault, in violation of 18 Pa.C.S.A. §3122.1(b);
- one count of unlawful contact with minors, in violation of 18 Pa.C.S.A. §6318(a)(1);
- two counts of corruption of minors, in violation of 18 Pa.C.S.A. §6301(a)(1);
- one count of indecent assault, in violation of 18 Pa.C.S.A. §3126(a)(8);
- two counts of selling or furnishing liquor or malt or brewed beverages to minors, in violation of 18 Pa.C.S.A. §6310.1(a);
- one count of criminal use of communication facility, in violation of 18 Pa.C.S.A. §7512 (a);
- one count of sexual abuse of children, in violation of 18 Pa.C.S.A. §6312(d); and
- one count of aggravated indecent assault, in violation of 18 Pa.C.S.A. §3125(a)(8);

On August 14, 2013, Defendant entered a guilty plea with an agreed upon

sentence that was approved by this court pending an SVP assessment and hearing, if

needed. Defendant pled to the following charges: one count of involuntary deviate

sexual intercourse , in violation of 18 Pa.C.S.A. §3123(a)(7); one count of statutory sexual

assault, in violation of 18 Pa.C.S.A. §3122.1(b); and two counts of corruption of minors, in

violation of 18 Pa.C.S.A. §6301(a)(1).

Defendant executed the colloquy form, including his understanding of the consequences of pleading guilty to a Megan's Law Offense and the consequences of being found a Sexually Violent Predator. At the conclusion of the guilty plea hearing, the court entered an order directing the State Sexual Offender Assessment Board to perform an assessment of Defendant, as required by 42 Pa.C.S.A. § 9799.24, to determine if Defendant is a sexually violent predator. Said assessment was performed and on October 25, 2013 the Sexual Offenders Assessment Board sent notice that Defendant met the criteria of a sexually violent predator.

On January 8, 2014 and February 26, 2014, an evidentiary hearing was held. On February 26, 2014 this court determined that Defendant was a Sexually Violent Predator pursuant to 42 Pa.C.S.A. § 9799.24(e)(3). Defendant filed a timely Notice of Appeal on March 27, 2014. Defendant alleges that this court erred in declaring him a sexually violent predator. We disagree.

The Commonwealth has the burden of showing that Defendant is a sexually violent predator by clear and convincing evidence. 42 Pa.C.S.A. §9799.24(e)(3). In order to determine whether a defendant is a sexually violent predator, the Commonwealth must show that a defendant was convicted of a "sexually violent offense," one of the offenses listed in the statute, and that a defendant is a sexually violent predator because he has a mental or personality disorder which makes the defendant more likely to commit a "predatory sexually violent offense." 42 Pa.C.S.A. §9799.12.

42 Pa.C.S.A. §9799.12 defines a sexually violent predator as "[a] person who has been convicted of a sexually violent offense as set forth in section 9799.14 (relating

2

to registration) and who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses."

There is no dispute that Defendant was convicted of sexually violent offenses as set forth in 42 Pa.C.S.A. § 9799.14. Defendant entered a guilty plea to involuntary deviate sexual intercourse , in violation of 18 Pa.C.S.A. §3123(a)(7), and one count of statutory sexual assault, in violation of 18 Pa.C.S.A. §3122.1(b). Both crimes are listed in 42 Pa.C.S.A. § 9799.14.

Therefore, in accordance with 42 Pa.C.S.A. §9799.24(a), this court properly ordered a member of the Board of Assessment to assess Defendant to see if he meets the criteria for a sexually violent predator. In 42 Pa.C.S.A. § 9799.24, the legislature has provided a list of fourteen factors to consider in the sexual offender assessment, but also points out that an assessment need not be limited to the listed factors.[1]

---

[1] 42 Pa.C.S.A. § 9799.24(b) lists as factors:

(1) Facts of the current offense, including:
    i.        Whether the offense involved multiple victims.
    ii.       Whether the individual exceeded the means necessary to achieve the offense.
    iii.      The nature of the sexual contact with the victim.
    iv.      Relationship of the individual to the victim.
    v.        Age of the victim.
    vi.      Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
    vii.     The mental capacity of the victim.

(2) Prior offense history, including:
    i.        The individual's prior criminal record.
    ii.       Whether the individual completed any prior sentences.
    iii.      Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:
    i.        Age of the individual.
    ii.       Use of illegal drugs by the individual.
    iii.      Any mental illness, mental disability or mental abnormality.
    iv.      Behavioral characteristics that contribute to the individual's conduct.

3

Thereafter, as discussed above, the Board member submitted a written report and a sexually violent predator hearing was held.

At the hearing, it is the court's duty to determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. 42 Pa.C.S.A. §9799.24(e)(3). See also Commonwealth v. Snyder, 870 A.2d 336, 347 (Pa.Super. 2005). The "clear and convincing" standard "requires evidence that is 'so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" Commonwealth v. Maldonado, 838 A.2d 710, 715 (Pa. 2003), quoting Rohm and Haas Co. v. Continental Cas. Co., 781 A.2d 1172, 1179 (Pa. 2001), quoting Lessner v. Rubinson, 592 A.2d 678, 681 (Pa. 1991).

An individual is not automatically found to be a sexually violent predator upon conviction of a sexual offense. Commonwealth v. Lipphardt, 841 A.2d 551, 558 (Pa.Super. 2004). The relevant inquiry is whether Defendant suffers from a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. § 9799.12.

A mental abnormality under the Act is defined as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S.A. § 9799.12. Predatory is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or

4

promoted, in whole or in part, in order to facilitate or support victimization." Id.

This court is also aware that just because a testifying Board member is found to be credible, does not necessarily lead to the conclusion that the Commonwealth has proved by clear and convincing evidence all the elements for a sexually violent predator classification. Lipphardt, 841 A.2d at 555-556, citing Commonwealth v. Krouse, 799 A.2d 835, 840 (Pa.Super. 2002), app. denied 821 A.2d 586 (Pa. 2003). The court must consider the assessment factors listed in 42 Pa.C.S.A. § 9799.24(b) and determine the likelihood that a defendant will commit another offense based upon these factors. Krouse, 799 A.2d at 843.

In examining a trial court's determination that SVP status is appropriate, an appellate court's review is plenary. Dixon, 907 A.2d at 535, citing Commonwealth v. Krouse, 799 A.2d 835, 837 (Pa.Super. 2002). The trial court will be reversed only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the court to determine that each element required by the statute has been satisfied. Dixon, 907 A.2d 535, quoting Commonwealth v. Plucinski, 868 A.2d 20, 25 (Pa.Super. 2005). The evidence must be viewed in the light most favorable to the Commonwealth and an appellate court may not weigh the evidence or substitute its judgment for that of the trial court. Id. "The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Id.

In the case at hand, the Commonwealth presented ample evidence to establish Defendant meets the requirements of a sexually violent predator. Defendant was

---

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the

5

convicted of the required enumerated offense. A sexually violent predator hearing was held at which time the Commonwealth presented the expert testimony of Dr. Mapes and Defendant presented expert testimony of Dr. Atkins. In the interest of judicial economy, this court entered findings of fact and conclusions of law on the record on February 26, 2014. Said findings and conclusions are attached hereto and made a part hereof.

As set forth on the record, the Commonwealth has, by clear and convincing evidence, met its burden of proof in establishing that Defendant's mental abnormality/ personality disorder makes him likely to engage in predatory sexually violent offenses and that Defendant is likely to reoffend. Therefore, based on the factors outlined in §9799.24 this court properly found Defendant to be a sexually violent predator. Defendant's argument on appeal regarding his sexually violent predator status is without merit.

BY THE COURT:

PHYLLIS R. STREITEL,        J.

DATE: 5-14-14

risk of reoffense.

6

COC 05/29/2014 11:30

THE COURT: Mr. Baylarian, what was the delay?

MR. BAYLARIAN: I was downstairs ringing the bell. I was downstairs with Mr. Frame. We were down there for awhile.

THE COURT: But you were trying to get here on time this afternoon?

MR. BAYLARIAN: Oh, yeah. I was done with Mr. Frame about 1:20, 1:25.

THE COURT: Okay. Good. I won't take your head off.

MR. BAYLARIAN: I apologize.

THE COURT: I just have a lot going on and the late backs me up. I'm glad I asked.

We're here in the matter of Brian Anthony Frame, case number 774 of 2013. Mr. Frame entered a guilty plea on August 14th of 2013. It's really a plea agreement, but the charges to which he pled guilty required that he be assessed to determine if he is a sexually violent predator according to the statutory scheme.

Now, I am now going to give my findings and conclusions and rulings. These are made

COC 05/29/2014 11:30

without benefit of a transcript. I have relied on my notes and documents.

Defendant pled guilty to involuntary deviate sexual intercourse, statutory sexual assault, and two counts of corruption of minors.

The first two charges are charges that lead to the need for an assessment under the law.

We had a hearing on January 8th and February 6th, 2014, on the issue of whether or not he is a sexually violent predator. We have had a number of snow days and delays, more than I have seen in my life during this time frame. So we're now here together to finally reach the conclusions and move forward on the implementation of the sentence.

In order for the Court to determine whether a defendant is a SVP, is the phrase I will use for sexually violent predator -- it might save a little time and effort to use SVP -- the Commonwealth must show that the defendant was convicted of a, quote, sexually violent offense, end of quote, one of the

offenses listed in the statute, and that a defendant is SVP because he has a mental abnormality or personality disorder which makes him more likely to commit a predatory sexually violent offense.

Section 979912 of the Title 42. I am not going to put in all of the statutory cites. I think we're all familiar with the law, but I am reading from the -- when I quote things, they are taken from 9799.

Predatory is defined as an act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization.

A mental abnormality or personality disorder under this act is defined as a, quote, congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of the other persons.

coc 05/23/2014 11:30

I must also consider the assessment factors listed at 9799.24 and determine the likelihood that the defendant will commit another offense based on those factors.

So, the defendant did plead guilty to sexually violent offenses. The first two of the four that I mentioned. That is a requirement in this analysis. So that requirement is met.

Dr. Mapes testified. His CV and his Pennsylvania Sexual Offenders Assessment Board report are both exhibits. And the assessment board will be referred to as the SOAB. He has been a member of the SOAB since 1997. He is found to be an expert in the field of forensic psychology, and in the assessment and treatment of sexual offenders.

Dr. Mapes has performed well over 500 SOAB evaluations and he has testified on SOAB matters more than 100 times.

In this case, the Defendant Frame was referred to Dr. Mapes for a SOAB assessment pursuant to a court order to determine if he is a sexually violent predator. Dr. Mapes

COC 05/29/2014 11:30

reviewed all of the information made available to him and conducted the assessment, the purpose of which was to render an opinion if the defendant meets the requirements set out by statute to be a sexually violent predator.

In the process, Dr. Mapes reviewed the police criminal complaint, the affidavit of probable cause, the District Attorney's list of charges, the Parkesburg Police investigative records, the Quarryville Police investigative records, and Investigator Nelson's summary. A summary report of defense counsel notified Dr. Mapes that defendant would not participate in the assessment. Dr. Mapes testified that 85 percent of those assessed choose not to participate in the SOAB evaluation. A defendant has the right to decline to participate.

Dr. Elliot Atkins testified on behalf of the defendant. And his CV and his letter opinion were read by me, the Court. They are, his letter opinion was regarding Dr. Mapes' report, their exhibits. And Dr. Atkins was found by stipulation to be an expert in

forensic psychology and in the treatment and assessment of sexual offenders.

Dr. Atkins also has years of experience in forensic psychology. He was asked to, quote, take a look at Dr. Mapes' report, end of quote. After he did, he asked for more, and defense counsel sent him, quote, discovery materials, end of quote. The record doesn't reflect what discovery materials he received.

Dr. Atkins met with the defendant twice for a total of six hours. He also had an associate do psychological testing of the defendant. Some of that testing was self-reporting.

Dr. Atkins believes that one cannot assess a person without meeting with the person.

Dr. Mapes considered the defendant's history with the current case and records surrounding it.

I have read the reports. I have read the CV's. I have read the court file, including the affidavit of probable cause. I have heard the arguments. I have heard two days of testimony.

COC 05/23/2014 11:38

It is in his report Dr. Mapes describes the instant offenses. They were one year six months apart. This is gathered also from the probable cause affidavit. They occurred in western Chester County.

The victims will be referred by me as the older victim and younger victim. The defendant first contacted the older victim through the social Internet program SKOUT in April, 2011. That victim told the defendant he was 15 years old. So the defendant knew that the victim was underage when they first started texting. And the defendant commented about him being young. Phone numbers were exchanged, and they texted back and forth for several months. They met in June of 2011 at a park when the victim texted the defendant that he was upset. They sat in the defendant's car.

The defendant initiated sexual behavior by placing his hands, the victim's hands, over the defendant's penis. The defendant then suggested oral sex, and they engaged in oral sex.

The victim was 15 at the time.

The next crimes charged occurred on New Year's Day, 2013. Both victims were together on that date in Quarryville. The older victim was 16 and the younger victim was 13. Defendant asked them to send him a picture of their penis, which they did via cell phone. Defendant drove to Quarryville, picked up both victims, and drove them to his house. There he gave them several cups of wine while they watched YouTube, then he took them to the bathroom where he shaved the older victim's genital area with an electric razor. The three then showered together. He digitally penetrated the younger victim's anus. After showering -- and the purpose was to make sure that it was clean.

After showering, the three got into defendant's bed. The defendant lubricated his penis and masturbated. After this, he performed oral sex on the younger victim while the older victim performed oral sex on the defendant. Following that, defendant inserted his penis into the younger victim's anus.

The victim told him to take it out because

it hurt really bad. The younger victim could hardly walk due to the pain. Defendant then drove the victims home.

The Act requires that we consider 15 factors during the course of the assessment to determine whether one is a sexually violent predator. The factors are not weighted. No factor is required as the absolute for determination of one's status. These factors will now be reviewed.

One, multiple victims. Yes, there was one victim the first time. There were two victims during the second offense.

Two, was excessive force used to achieve the offense? No.

Three, nature of sexual contact. It was oral sex and anal sex. There was evidence of intent, request for pictures, showering, cleaning the victim before sex, shaving the older victim's genitals.

Four, relationship of -- number four, relationship of defendant to victims. He met his first victim through the Internet, the program SKOUT. Defendant was about 41. His

victim was 15. Defendant was a stranger when he met his second victim who was 13.

Number five, age of victim. The older victim was 15 during the first sexual assault; 16 during the second. The younger victim was 13 at the time of the offense.

Six, unusual cruelty during commission of crime? None.

Seven, mental capacity of victims. During the first offense, the older victim was considered unable to give informed consent due to his age. During the second offense, he was considered able to give informed consent. He was 16. The younger victim was considered unable to given informed consent during the offense due to his age. He was 13.

There was no other evidence of mental disability or disorder that would further impair either victim's capacities to give informed consent.

Eight -- so they are the facts of the current offense.

Pursuant to the statute, statutory requirement of the assessment number's next.

We go to prior offense history. This defendant has no prior criminal record, no prior sentences. That was eight and nine.

Now, ten, sex offender treatment. Defendant has not successfully completed a approved sex offender treatment program. That was number ten.

Characteristics of the offender is the next area, offender age. He was between 41 and 42 when these offenses occurred. His sexual interest in a 13 or 14 year old male is deviant. While an adult male's interest in a 15 year old is not deviant, acting on that interest is also considered deviant behavior. And sexual deviancy is the second of two pathways to life persistent offending.

Number 12, use of drugs. Both boys were given alcohol at defendant's house. The younger victim reported that they received three cups of wine. This was from a spigot in the refrigerator.

Thirteen, mental illness disability or abnormality. This is the key issue. I am building a record, but this is where there was

disagreement. There is much testimony from both doctors on this point. Dr. Mapes stated that the defendant has had a sexual interest in two underage boys, and it occurred over a year and a half period. Defendant was over 16 and more than five years older than his victims. As a result of his sexual interest and behavior, he has lost freedoms and employment.

Dr. Mapes presented testimony and supporting explanations as to his determination that the defendant has the diagnosis of paraphilia NOS with pedophilia features.

Dr. Atkins was of the opinion, based on his review of the defendant, and his letter critique of Dr. Mapes' report, that he would identify the defendant as having a depressive disorder NOS and alcohol dependence. I will discuss this further.

And then there are a few final categories. Behavioral characteristics contributing to conduct. In the first offense with the older victim, the defendant met and cultivated a relationship with him online. Later, he initiated the first sexual encounter. The

COC 05/29/2014 11:30

victim at that time was 14 and unable to give consent. And in the more recent offense, I need not go over that again, but it involved first a cell phone, then giving them alcohol, then shaving genitals. None of these acts were necessary to commit offenses, as Dr. Mapes reported. The acts would be consistent with an offender who was practiced either through actual experience or through fantasy. And it was his finding that shaving of the older victim's genitals was consistent with an offender who have an interest in younger victims.

Additional factors associated with risk, because the enumerated factors also request factors that are supported in the assessment field as reasonably related to the risk of reoffense, and these are factors that Dr. Mapes stated, a middle-aged man who selects underage boy victims is at higher risk to reoffend than one who selects underage female victims. That was 15.

Sixteen, defendant initiated the contact with the older victim. His in person contact

occurred when the older victim was vulnerable due to stress that he was suffering.

Defendant requested pictures of the penises of the boys on the second offense and that fact pattern is consistent with grooming of victims.

Dr. Mapes testified that paraphilia NOS with pedophilia features is considered a lifetime disorder, which can be treated but not cured. Symptoms are likely to wax and wane across the lifespan.

Now, in further review of the testimony, several key things are agreed to by both sides. First, that the defendant was convicted of sexually violent offenses; second, defendant's actions met the criteria for predatory behavior. Both sides agreed to that third of the two pathways to lifetime offending. Neither side found that the defendant presented chronic antisocial behavior pathway.

So that would leave the sexual deviancy pathway.

Now, I am going to go over the discussion of the experts. Dr. Atkins testified. He said

Dr. Mapes should have interviewed the defendant, and that you can't make an assessment without an interview. This is a statutory analysis here.

The Legislature has presented it to the courts. And to say that the SOAB can't make the determination, 85 percent of the time because 85 percent of the defendants do not agree to be assessed, would effectively negate the statute.

So I find that that is not a controlling factor.

Dr. Atkins, in his report, said he was aware the defendant has pled guilty to one count of involuntary deviate sexual intercourse. He failed to list any of the other charges. I don't know if he was aware that there were other charges, or if there was only one. The statutory sexual assault was also a SOAB evaluation crime.

He indicated he reviewed the discovery materials, but were not sure what they consisted of.

Dr. Atkins said that as an adjunct to the

interviews, psychometric assessment was conducted through utilizing both objective and self-reporting instruments. The testing that he is referring to including the Beck Depression Inventory BDI-11; second, Minnesota Multiphasic Personality Inventory, MMPI-2; and the third is the Abel Assessment for Sexual Interest, AASI-III. The Abel Assessment uses objective and subjective, that means self-reporting data to a measure of one's sexual interest to various stimuli.

And Dr. Atkins believes that this defendant suffers from chronic depression. His opinion and diagnosis was pursuant to the DSM-5. It's his belief that the defendant suffers from depressive disorder NOS and alcohol dependence.

I do note that the SOAB does not use the DSM-5. It has not been approved. I was not presented evidence on whether that did or did not affect these two diagnoses. But I am aware that there has been sweeping changes in the DSM-5 versus the DSM-IV or DSM-IV-TR. And throughout his letter, Dr. Atkins continually

references the DSM-5 in his review and criticism of Dr. Mapes' report.

He finds fault with Mapes conclusion of paraphilia NOS. He says it can't be just that. And then he finds fault with his conclusion of pedophilia features.

Regarding the DSM, Dr. Mapes testified that the SOAB has not adopted it, the DSM-5. There are several problems with it, including legitimate questions raised as to whether it will be admissible in court.

He testified that the Abel test used by the defendant by the defense expert is not used by the SOAB. He knew the test well. He described it. But the self-reporting involved in the Abel test is an issue. The Board actually used it years ago, but they found large numbers of offenders with known victims, those offenders had, basically, skewed there responses to the test.

The SOAB felt the Abel test was not reliable and it was also not relevant for their purposes. It merely assesses sexual interest, not sexual risk. He did agree, Dr. Mapes did,

did that the Beck test assesses depression.

Now, something that wasn't addressed to the Court is what connection depression diagnoses have with those who come before the Court. Because many, many defendants are currently suffering from depression when they are involved in their criminal cases. It's very stressful. The unknowns of their legal situation, what they stand to lose, job, family, freedom, chunks of their life, leads to a large number of depression diagnoses with the body of defendants pending trial. And I know that at the prison a good number of the prisoners are medicated for depression.

That wasn't addressed, but it's something that, you know, can't say depression in a vacuum. And there was nothing presented by either side saying if there was any connection between depression and sexual acting out. So I don't find any connection. No one has presented such. And I am not reading that in. But it did -- it was something I noted.

Dr. Mapes also noted that Dr. Atkins failed to review the 14 statutory criteria

COC 05/29/2014 11:30

required. It's interesting to arrive at a decision here. I just think that it's very good exercise to go through all of the statutory requirements, both those 14 and assessment and everything else.

So that in focussing the Court on what the task is at hand, I'd have to realize what the parameters are of the test. And knowing that, then review again the testimony of the experts.

We do have a legislatively constructed analysis that must be completed. Dr. Atkins focussed on the diagnosis and referred to his testing which Dr. Mapes has indicated, you know, a good bit of it was not reliable and the DSM-5 was not applicable, et cetera.

Dr. Mapes explained the paraphilia NOS is widely used in the DSM-IV-TR, and is a common diagnosis in the sex offender field. I believe that Dr. Atkins challenged this.

I have seen in my review of the cases and affirmance of cases in which the diagnosis, with Superior Court affirmance, diagnosis of paraphilia NOS, I have come across it in prior SOAB hearings for SVP. The pedophilia is an

interest in prepubescent children, but that's up to age 13, including age 13. The shaving of the genitals indicates trying to rid the evidence of post-pubescence, according to Dr. Mapes. That does make sense.

I don't think that -- I don't think that there is any way that Dr. Atkins can get around the fact that there was a 13 year old child involved in the second offense. And that child appeared to be the definite target of the defendant during that instance. And that the first offense involved the defendant finding a young man who happened to be 14. Then 15 -- let's see, I might be getting the number wrong -- 15 when he was met. So you can't change the ages of the victims just by saying that the defendant prefers older adolescents than adults.

The interest in the 13 year old, wanting to shave the victims and successfully shaving the older victim supports Dr. Mapes finding of pedophilia feature, and that is why he didn't call him, didn't assign full pedophilia because of all the facts involved in both offenses.

In summary, I find Dr. Mapes very experienced, knowledgeable and very credible. Dr. Atkins reported the defendant's current sexual interest is an older adolescent and adult male. That sounds awful convenient, but I don't find that the claim that he is focussed just on 15 to 17 year old adolescents and adults which comes from self-reporting is as helpful to the Court as just assessing what's transpired here, which can't be changed by any self-reporting.

We have to look at the defendant's recent actions.

The other thing is he reported it as the defendant's current sexual interest. And I am not sure what current means because these assessments were done after the defendant had been arrested, after he had met with his attorney, after they decided to get an evaluation. And I don't know that that would be the ideal time to be making such a assessment.

And, again, Dr. Atkins' complaint with paraphilia NOS said, at least, it should be

spelled out per the DSM-5. But, once again, that is not what we're working with at this time.

Dr. Mapes is very experienced and knowledgeable in the Sexual Offender Assessment that's done. He is a very credible doctor. Dr. Atkins is also a very qualified expert with experience. But to the extent the testimony between the experts conflicts, I find Dr. Mapes' testimony, reasoning and analysis to be more credible.

Based upon all of the above, I find that defendant has a mental abnormality or personality disorder. He has a congenital or acquired condition which is the impetus to his sexual offending.

I find that he has paraphilia NOS with pedophilia features. This diagnosis is considered a lifetime disorder, which can be treated, but not cured.

Therefore, the Commonwealth has, by clear and convincing evidence, met its burden of proof in establishing the defendant's mental abnormality slash personality disorder makes

him likely to engage in predatory sexually violent offenses, and that he is likely to reoffend. Therefore, based on the factors outlined in 42 Section 9799.24, I find by clear and convincing evidence that the defendant is a sexually violent predator.

Now that I found that, I have to make sure that the defendant is aware of his rights.

I know that the defendant entered a guilty plea colloquy form. There is nothing attached to the colloquy form. That is different from a straight guilty plea form. I know that we went over a registration notification here.

MR. BAYLARIAN: That should all be in the file, your Honor.

THE COURT: Yes. Right here. I think that it's -- how long is his reporting?

MR. BAYLARIAN: Lifetime.

THE COURT: Lifetime.

This notification requirement here had to do with your conviction of a sexually violent offense, sir. What I am going to go over with you now are your additional registration requirements as a sexually violent predator.