J-S57023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEAN TAYLOR | |
| Appellant | No. 1893 EDA 2014 |

Appeal from the Judgment of Sentence June 27, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003315-2012
CP-51-CR-0004287-2011

BEFORE:  MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 11, 2015**

Sean Taylor appeals from the judgment of sentence imposed on June 27, 2014, in the Court of Common Pleas of Philadelphia County.  On March 20, 2013, a jury convicted Taylor of rape, involuntary deviate sexual intercourse ("IDSI"), two counts of unlawful contact with a minor, aggravated indecent assault, two counts of indecent assault, endangering the welfare of a child ("EWOC"), corrupting the morals of a minor ("CMOM"), and indecent exposure.[1]  Subsequently, the trial court sentenced him to an aggregate term of 25 to 50 years' incarceration.  In this appeal, Taylor raises the following issues:  (1) whether there was sufficient evidence to

_____

[1]  18 Pa.C.S. §§ 3121(a)(1), 2123(a)(1), 6318(a)(1), 3125(a)(1), 3126(a)(1), (2), 4304(a)(1), 6301(a)(1), and 3127(a), respectively.

prove he was guilty of all charges; (2) whether the court erred in granting the Commonwealth's motion to consolidate the two indictments with which he was charged; and (3) whether the court erred in finding that Taylor was a sexually violent predator ("SVP"). Based upon the submissions by the parties, the certified record, and the relevant law, we affirm.

We incorporate herein by reference the trial court's detailed and thorough summary of the factual history of this case, as set forth in its Pa.R.A.P. 1925(a) opinion. *See* Trial Court Opinion, 12/4/2014, at 3-13. We briefly summarize the background underlying this matter as follows. Taylor's convictions stem from the sexual abuse of two minor victims, S.R. and C.M. S.R. was the step-daughter of Taylor's sister. She stated she was seven years old when Taylor began sexually abusing her. The abuse continued and escalated until S.R. turned 14 years old when she ran away from home after Taylor raped her. C.M. was a friend of the family, who frequently visited the home where Taylor lived. She testified she was nine years old when Taylor abused her.

The trial court set forth the procedural history as follows:

> On February 23, 2011, [Taylor] was arrested and charged with rape, IDSI, unlawful contact with a minor, aggravated indecent assault, indecent assault, and EWOC. On July 26, 2011, [Taylor] was arrested and charged with a second count of unlawful contact with a minor, a second count of indecent assault, CMOM and indecent exposure. On September 14, 2012, this Court granted the Commonwealth's motion to consolidate the two indictments filed against [Taylor].

From March 13 to March 19, 2013, a trial was held in the presence of a jury. On March 20, 2013, [Taylor] was found guilty of all charges. On June 17, 2013, the Sex Offender Assessment Board [("SOAB")[2]] conducted an assessment of [Taylor] and found him to be a sexually violent predator. This Court agreed with that finding. On June 27, 2014, this Court sentenced [Taylor] to 10 to 20 years state incarceration on the rape charge, 10 to 20 years state incarceration on the IDSI charge, 2½ to 5 years state incarceration on the second count of unlawful contact with a minor, 2½ to 5 years state incarceration on the CMOM charge, and 2½ to 5 years on the indecent exposure charge. The sentence[s] on rape, IDSI, unlawful contact with a minor, and CMOM charges were to run consecutively with each other, while the sentence on the indecent exposure charge was to run concurrently with the other charges. This Court imposed no further penalty on all remaining charges. [Taylor] was thus sentenced to a total aggregate term of 25 to 50 years state incarceration.

On July 1, 2014, [Taylor], through counsel, filed a Notice of Appeal to the Superior Court. On September 3, 2014, after receiving all the notes of testimony, this Court ordered defense counsel to file a Concise Statement of Errors Pursuant to Pa.R.A.P. 1925(b), and defense counsel did so on September 25, 2014.

Trial Court Opinion, 12/4/2014, at 2.

In his first claim on appeal, Taylor argues the evidence was insufficient to sustain his convictions. Our review of such claims is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test,

_____

[2] Dr. Barry Zakireh examined Taylor's records and submitted a report. The Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.14, replaced Pennsylvania's Megan's Law effective December 20, 2012.

we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Specifically, Taylor contends, "[T]he evidence was insufficient as a matter of law to prove each and every element of the crimes where the only evidence was the unreliable testimony of the complainants." Taylor's Brief at 14. He points to the following:

[T]he complainants['] unreliable testimony did not make out the elements of the sexual offenses on each of the victims as a matter of law. S.R. was ejected from her house and waited many years to report the alleged assaults and in fact denied it to multiple family members and the Philadelphia Department of Human Services. As testified to, S.R. admitted that she posted negative Facebook [comments] including that she wanted her father to die. She also posted that she wanted "Taylor and the fake [] family" to stay out of her business. She admitted that she did not tell anyone that it happened right away.

C.M. also claimed to be assaulted by [Taylor] only after S.R. had revealed that she had been assaulted. On cross-examination, C.M. admitted that the offenses occurred over ten to eleven years [ago] and that she could not remember exactly when the incidents in question occurred.

[Taylor] testified that he never had any sexual contact with S.R., nor did he ever attempt to have sexual contact with her. He further testified that S.R. left a message on his phone in March 2008. [Taylor] further testified that he never had any inappropriate contact with C.M. [E.R.], S.R.'s father testified that S.R. had a reputation for being untruthful among members of the community. [E.R.] further testified that he had known [Taylor] for approximately fifteen years. [E.R.] stated that [Taylor] had a reputation in the neighborhood for being truthful and law-abiding. [Taylor] had multiple other people testify about his good and law abiding reputation in the community. The testimony of the complainant S.R. simply did not make out the charges. C.M. only came forward after speaking with S.R. and it was almost ten years after the incident allegedly occurred.

*Id.* at 16-17 (citations omitted).

In reviewing Taylor's argument, we note:

This argument goes to the credibility of the witness's testimony, and is, therefore, not an attack on the sufficiency of the evidence, but an allegation regarding the weight it should have been afforded. ***Commonwealth v. Palo***, 2011 PA Super 136, 24 A.3d 1050, 1055 (Pa. Super. 2011) appeal denied, 613 Pa. 663, 34 A.3d 828 (Pa. 2011) (The appellant's "sufficiency" argument directed entirely to the credibility of the Commonwealth's chief witness challenged the weight, not the sufficiency, of the evidence).

***Commonwealth v. Griffin***, 65 A.3d 932, 939 (Pa. Super. 2013).

Because Taylor failed to raise a challenge to the weight of the evidence

before the trial court,[3] he has, therefore, waived it for purposes of appeal.

***See Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa. Super. 2012)

("[A] weight of the evidence claim must be preserved either in a post-

_____

[3] ***See*** Pa.R.Crim. 607(A).

sentence motion, by a written motion before sentencing, or orally prior to sentencing.  Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.") (citations omitted).  Accordingly, Taylor's first claim fails.[4]

Next, Taylor argues the court erred in granting the Commonwealth's motion to consolidate both criminal cases because they were factually unrelated and it only served to prejudice him.   Taylor's Brief at 18.  Specifically, he states:

> The joinder of the cases only prejudiced the outcome of the cases.  While it served judicial economy to join the cases and have one trial against [Taylor,] having two complainants testify together at the same trial just reenforced [sic] each other[']s version of events.  Taken individually, as mentioned above, there were questions regarding the motives and the credibility of the witnesses.  By joining the cases, the jury may have convicted [Taylor] only by showing his propensity to commit crimes, or because the jury was incapable of separating the two different complainants and assessing their credibility on an individual basis.

**Id.** at 19.

The standard of review we apply in matters concerning the court's granting of a motion to consolidate is as follows:

> In reviewing a trial court decision to consolidate or to sever offenses for trial, our standard is abuse of discretion. ***Commonwealth v. Collins***, 550 Pa. 46, 54, 703 A.2d 418, 422

---

[4] Even if Taylor had properly raised his argument as a sufficiency claim, the trial court properly analyzed this issue in its Rule 1925(a) opinion; therefore, we would affirm on the basis of its discussion.  **See** Trial Court Opinion, 12/4/2014, at 15-23.

(1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998). Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.Pro. 582(A)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.Pro. 583.

Our Supreme Court has established a three part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine

> whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses. ***Commonwealth v. Lark***, 518 Pa. 290, 302, 543 A.2d 491, 497 (1988) (quoted in ***Collins***, ***supra*** at 55, 703 A.2d at 422).

***Commonwealth v. Thomas***, 879 A.2d 246, 260 (Pa. Super. 2005).

Here, the court found the following:

> In the case at bar, consolidation of the separate indictments filed against [Taylor] was proper because either offense would have been admissible in the other case to show a common scheme, plan or design and to deflect anticipated credibility attacks against the victims. The facts of each offense were similar enough to each other to suggest a common scheme, plan or design. Both victims were prepubescent, African-American females who were roughly the same age when [Taylor] began to abuse them. Furthermore, each victim was abused contemporaneously with the other and the abuse occurred at the same residence. [Taylor] shared a similar relationship with both girls, and the abuse started when [Taylor] was babysitting each of them. In addition, the nature of the abuse itself was similar. In both instances, the abuse began when [Taylor] was in the same room as the victims as they

- 7 -

entertained themselves with electronics. [Taylor] then initiated contact with them by stroking their genitals or forcing them to stroke his. In both offenses, [Taylor] continued to touch each of the victims after they told him not to, and he initiated further contact with them while other children were present in the room with him and the victim. Thus, the facts of each offense were similar enough that each would have been admissible in the other case to show a common scheme, plan or design. Furthermore, evidence of each offense was critical to corroborate the victims' testimony and to deflect anticipated attacks against their credibility. At trial, defense counsel went to considerable lengths to attack S.R.'s credibility and suggest that she fabricated her allegations against [Taylor]. Furthermore, given that the abuse in this case was not reported until years after the last incident occurred, the testimony of each victim was the sole direct evidence available to the Commonwealth to prosecute [Taylor]. Evidence that [Taylor] abused another girl in a similar manner was critical to corroborate each victim's testimony and to deflect [Taylor]'s repeated attacks on their credibility.

Trial Court Opinion, 12/4/2014, at 24-25.

We agree with the trial court's well-reasoned analysis. With respect to the first part of "consolidation test," we note the evidence of each abuse would have been admissible in a separate trial for other assault. Pennsylvania Rule of Evidence 404(b)(2) allows evidence of other crimes, wrongs, or acts when that evidence is relevant for a purpose other than showing criminal propensity, including common plan.[5] Second, the evidence

---

[5] Moreover, "[f]actors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." *Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa. Super. 2010), *quoting Commonwealth v. Taylor*, 671 A.2d 235, 240 (Pa. Super. 1996). As the trial court points out in its findings, there were substantial similarities with respect to the assaults on both victims.

at issue was "capable of separation by the jury so as to avoid danger of confusion." *Thomas*, 879 A.2d at 260. Lastly, Taylor has not met his burden of demonstrating that he was unduly prejudiced by the consolidation of offenses. Accordingly, the court did not abuse its discretion in granting the Commonwealth's motion to consolidate the two criminal dockets. Therefore, Taylor's second argument is without merit.

In his final argument, Taylor complains the trial court erred in classifying him as an SVP because the evidence did not support such a finding. Taylor's Brief at 20. Taylor points to the following: (1) he had no prior criminal record and was 30 years old; (2) there was no indication in his history or evaluation that supported a diagnosis of pedophilia not otherwise specified; (3) he did not have a history of drug or alcohol abuse; and (4) there was an absence of escalation in his offenses. *Id.* at 21. Additionally, Taylor states:

> Dr. Zarkireh's [sic] conclusion that [Taylor] engaged in sexually predatory behavior was ill-defined and unreliable because the evaluation was based solely on police reports and information provided by the Commonwealth. [Taylor] was not interviewed by the evaluator so no psychological testing was conducted which could show a propensity to re-offend. The conclusion that [Taylor] had a mental disorder and was likely to re-offend was not based on scientific testing or all of the facts that were available for review.

*Id.*

Regarding Taylor's challenge to his SVP classification, we are guided by the following:

A challenge to a determination of SVP status requires us to view the evidence:

> [I]n the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue.

**Commonwealth v. Plucinski**, 868 A.2d 20, 25 (Pa. Super. 2005) (internal citations and quotation marks omitted). The scope of review is plenary. **Commonwealth v. Brooks**, 7 A.3d 852 (Pa. Super. 2010). "[A]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence." **Commonwealth v. Fuentes**, 991 A.2d 935, 944 (Pa. Super. 2010) (*en banc*) . . . .

A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. **Commonwealth v. Meals**, 912 A.2d 213, 218 (Pa. 2006). The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. **Commonwealth v. Baker**, 24 A.3d 1006, 1035 (Pa. Super. 2011). A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing. **Commonwealth v. Sanford**, 863 A.2d 428, 431 (Pa. 2004) (distinguishing concepts of sufficiency of evidence versus admissibility of evidence, but refusing to render any opinion on whether SVP expert's "reliance on the affidavit of probable cause and the charging documents somehow rendered her testimony inadmissible as this issue is not before this court").

…

Our task ... is one of review, not one of reweighing or assessing the evidence in the first instance. **Meals**, 912 A.2d at 223.

"After conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S.A. § 9799.24(a). [Subs]ection 9799.24(b) provides:

§ 9799.24. Assessments

…

(b) Assessment.—Upon receipt from the court of an order for an assessment, a member of the board ... shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

…

42 Pa.C.S.A. § 9799.24(b). An SOAB board member conducts the assessment to determine if the individual should be classified as an SVP. *Id.* The SOAB merely assesses the defendant; it does not perform an adjudicative function. ***Commonwealth v. Kopicz***, 840 A.2d 342, 351 (Pa. Super. 2003). The statute dictates the factors for the expert to consider when making an SVP analysis:

[T]he "science" here (and the SVP designation consequences it triggers) is responsive to, indeed it is a direct byproduct of, a specific legislatively-adopted scheme which sets forth the relevance and contours of the challenged evidence. The General Assembly has determined that a sexual offender's SVP status is significant to the operation of the registration and notification provisions of the law. The Assembly has defined the triggering term ("sexually violent predator") and has set forth the factors to be considered in making that determination. This scheme represents a legislative policy judgment concerning the proper response to certain sexual offenders. The question of SVP status is thus a statutory question, . . . and, at least in the absence of a challenge to the propriety of the substance of the statute,

the question of evidentiary relevance is framed by the very provisions of the statute itself, not some external source.

*Dengler*, 890 A.2d at 383 (holding: "Because the legislature provided the framework for assessing whether an offender is an SVP, expert testimony tracking that framework, by definition, should be deemed generally accepted in the community of professionals who conduct SVP assessments. . . ."). Therefore, the salient statutory inquiry for SVP designation:

> [I]s identification of the impetus behind the commission of the offense; that is, whether it proceeds from a mental defect/personality disorder or another motivating factor. The answer to that question determines, at least theoretically, the extent to which the offender is likely to reoffend, and [S]ection [9799.24] provides the criteria by which such likelihood may be gauged. *Plucinski*, *supra* at 26.

"To deem an individual a sexually violent predator, the Commonwealth must first show [the individual] 'has been convicted of a sexually violent offense as set forth in [section 9799.14] . . . .'" *Commonwealth v. Askew*, 907 A.2d 624, 629 (Pa. Super. 2006); *see also* 42 Pa.C.S.A. § 9799.12. "Secondly, the Commonwealth must show that the individual has 'a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses.'" *Askew*, *supra*. When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP. *Kopicz*, *supra.*

An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment. *Commonwealth v. Howe*, 842 A.2d 436, 445-46 (Pa. Super. 2004). SVP status, therefore, does not require proof beyond a reasonable doubt; the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP. *Commonwealth v. Killinger*, 888 A.2d 592, 600 (Pa. 2005).

*Commonwealth v. Prendes*, 97 A.3d 337, 355-58 (Pa. Super. 2014)

(footnote omitted).

Here, the court found the following:

In the case at bar, there was clear and convincing evidence that [Taylor] was a sexually violent predator. At the hearing, both parties stipulated to the contents of the report prepared by Dr. Barry Zakireh of the [SOAB], although the defense did not stipulate to Dr. Zakireh's conclusion. (N.T. Sentencing 6/27/2014 p.4, 9). Defense counsel argued that there was insufficient evidence in the report to find that [Taylor] was a sexually violent predator, because Dr. Zakireh based his conclusion solely on the facts of the case and did not conduct an interview with [Taylor]. Id. at 11-16. The Commonwealth responded that assessments were typically conducted by the [SOAB] solely using the information provided at trial, as defendants rarely participate in the assessment, and there was an abundance of evidence presented at trial that [Taylor] did meet the criteria to be a sexually violent predator. Id. at 17-18.

This Court agreed with the Commonwealth, and read the report prepared by Dr. Zakireh into the record. According to the report,

"[Taylor] meets the criteria set forth in the Diagnostic and Statistical Manual for Mental Disorders, Fourth Edition for Pedophilic Disorder, Non-Exclusive Type, and Sexually Attracted to Female Children … [Taylor's] reported behaviors indicate clearly that he experienced repetitive sexual urges, pre-assault fantasies, and behaviors toward prepubescent female minors; was invested in the sexual contacts; and unable to stop his apparently planned and/or repetitively occurring deviant sexual urges."

Id. at 21-23. Furthermore, "[Taylor] has acted on his deviant urges, and due to this condition he has experienced interpersonal difficulty and impairment or adverse effects for his psychological well-being, that is, his loss of freedom, [and] loss of appropriate interpersonal or family relationships." Id. This Court further read that

"given that his condition is so related to [Taylor's] sexual offense, and given that the people with this condition show a recurrent or intense interest or arousal or contact involving prepubescent children or minors, this examiner came to the opinion that this disorder meets the statutory

> requirement for mental abnormality and predisposes this defendants toward commission of criminal sexual acts."
>
> Id. at 23-24. This Court noted that Dr. Zakireh thus found a disorder which met the mental abnormality requirement of the statute, and that the other sections of the report were similarly thorough. This Court thus found that the Commonwealth met its burden to prove by clear and convincing evidence that [Taylor] met the definition of a sexually violent predator. Id. at 25.
>
> The evidence relied upon by Dr. Zakireh in arriving at the conclusion that [Taylor] engaged in sexually predatory behavior as a result of a mental abnormality was thorough and well-documented. Dr. Zakireh considered the facts of the offense and the behavioral characteristics of [Taylor] in support of his conclusion that [Taylor] suffered from Pedophilic Disorder and had a high potential for recidivism. The absence of an interview with [Taylor] did not preclude Dr. Zakireh from evaluating [Taylor]'s behavior through the available case history, including the testimony presented at trial, for characteristics similar or dissimilar to the criteria set forth in the law for defining a sexually violent predator. Rather, the evidence considered by Dr. Zakireh in his evaluation was sufficient for this Court to find by clear and convincing evidence that [Taylor] was a sexually violent predator and this Court's determination should be affirmed.

Trial Court Opinion, 12/4/2014, at 31-32.

We agree with the court's determination. Contrary to Taylor's argument that he was not diagnosed with a personality disorder, Dr. Zakireh determined Taylor suffered from a mental abnormality, namely pedophilia. The trial court was permitted to accept Dr. Zakireh's opinion. Additionally, the fact that Dr. Zakireh did not personally interview Taylor is of no

consequence.[6]   We emphasize "the absence of an interview does not preclude the ability to evaluate the offender's behavior through available history for characteristics similar or dissimilar to the criteria set forth in the law for defining a sexually violent predator."  **Prendes**, 97 A.3d at 359 (citation omitted).  Likewise, it is well-established that an assessor may rely on various documents, not just transcripts, to determine whether a defendant meets the criteria for classification as a sexually violent predator.  **See id.** at 362, *citing* Pa.R.E. 703.

Furthermore, we conclude the trial court's findings are supported by the record and our review of this matter finds no error in the trial court's determination.   The Commonwealth presented clear and convincing evidence, *via* Dr. Zakireh's stipulated report, that established Taylor suffered from pedophilia, and which made him likely to engage in predatory sexually violent offenses.  **See Feucht**, 955 A.2d at 863.  As evidenced in his report and the court's discussion of the stipulated report, Dr. Zakireh accounted for the statutory factors as set forth in Section 9795.4(b), including the facts of the offenses at issue and his behavioral characteristics that contributed to his conduct.   Based on these factors, he then rendered an opinion,

_____

[6]  We note Taylor actually challenges the weight the trial court assigned Dr. Zakireh's testimony, given the absence of a personal interview.  **See generally**, **Meals**, **supra**.

explaining his determination that Taylor met the criteria for classification as an SVP.

Moreover, while Taylor may have benefitted from the absence of several Section 9795.4(b) factors, he is essentially asking this Court to reweigh all of the factors, which we are not permitted to do. **See Meals**, 912 A.2d at 222-223 (held that the reviewing court "stepped beyond its authority when it reweighed the [SVP] evidence, giving more weight to 'absent' factors than to those found and relied upon by the trial court, and ignoring the Commonwealth's expert's explanation of the relevance of the absent factors"). Therefore, based upon the totality of circumstances and information available to the trial court, we conclude there was sufficient evidence to designate Taylor as an SVP. Accordingly, his final argument fails, and we affirm the judgment of sentence.[7]

Judgment of sentence affirmed. Application for extension of time to file brief granted.

_____

[7] It merits mention that we received the Commonwealth's brief before we had the opportunity to address its second motion for extension of time to file a brief. Therefore, we now grant the motion, and note that we have considered the brief as part of our review.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/11/2015</u>