J-S02044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DANIEL JOSEPH PREZIOSI | |
| Appellant | No. 443 EDA 2015 |

Appeal from the Judgment of Sentence entered September 5, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at Nos: CP-48-CR-0004211-2013 and
CP-48-CR-0000435-2014

BEFORE: SHOGAN, LAZARUS, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 15, 2016**

Appellant, Daniel Joseph Preziosi, *pro se* appeals from the September 5, 2014 judgment of sentence entered by the Court of Common Pleas of Northampton County ("trial court"), following a jury trial that resulted in him being convicted of robbery, two counts of simple assault, theft by unlawful taking (movable property), receiving stolen property, and escape.[1] After careful review, we affirm in part and vacate in part.

The facts and procedural history of this case are uncontested. On October 19, 2013, Appellant was charged with multiple offenses, including robbery, simple assault, theft by unlawful taking, and receiving stolen

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 2701(a)(3), 3921(a), 3925(a), and 5121(a), respectively.

property, at docket number 4211 (hereinafter "First Case"). The affidavit of probable cause accompanying the complaint provided:

> On 10/18/2013 at about 1414 hrs [Detective Seargent Michael Melinsky, Colonial Regional Police Department,] received a call from Wunderler's Market located at 429 East Main St[reet,] Bath[, PA] for an armed robbery that had just occurred at that location. Upon [Detecive Melinsky's] arrival, the victim[s] of the robbery Donald and Joyce Wunderler detailed that they were both at the store when an unknown white male entered the store and brandished a dark[-]colored semi-automatic style handgun. The unknown male demanded the money in the cash register. Joyce Wunderler stated that the male was given the money out of the cash register, mostly 1, 5 and 10 dollar bills. After the actor received the money he fled on foot, north from the store.
>
> [Detective Melinsky] viewed and copied the store surveillance video which was working at Wunderler's Market at the time of the robbery. The video shows the male that was described by the Wunderler's brandishing the firearm, robbing the store.
>
> [Detective Melinsky] interviewed a Michael Flyte[.] Flyte reported seeing a suspicious vehicle in the area of Wunderler's Market at the time of the robbery. Flyte described the vehicle as a 1990's 4-door beige Toyota Camry with front end damage, missing a front headlight assembly. The vehicle's rearview mirror was dangling from the windshield and the rear of the vehicle had a sticker, a heart-shaped zebra pattern, outlined in pink. Flyte described the driver of the car as a white male in his mid-20s about 6 feet tall and a 175 lbs., wearing black coat with a white hood. [Detective Melinsky] showed a picture of the suspect from Wunderler's Market to Flyte and [Flyte] identified the male in the picture as the person driving the suspicious vehicle.
>
> The vehicle that was identified by Flyte was located later that night parked on the block of East Main St. in Bath. Surveillance was conducted on the vehicle and [Appellant] was observed opening the vehicle and retrieving something from the rear seat. [Detective Melinsky] and Sgt. Enstrom identified themselves to [Appellant]. [Appellant] was then observed throwing [a] pill bottle under a parked car. [Appellant] was then taken into custody and transported to police headquarters. Search of [Appellant] when taken into custody revealed that [Appellant] had in his pants pocket a stack of money, which was mostly in one and five dollar denominations.
>
> At police headquarters, with [Appellant] in custody [Detective Melinsky] and assisting officers viewed the

surveillance video from Wunderler's Market. [Detective Melinsky] and assisting officers confirmed that it was [Appellant] on the video committing the robbery.

[Detective Melinsky] had photo lineups created with [Appellant's] picture in the lineup. [Detective Melinsky] showed the photo lineup to both Mr. and Mrs. Wunderler separately. They both identified [Appellant] as the person who robbed their store earlier in the day.

Affidavit of Probable Cause, 10/19/13. On December 18, 2013, constables transported Appellant to a district court for a preliminary hearing, but Appellant managed to flee from the constables' custody. Appellant subsequently was arrested and charged with one count of escape at docket number 435-2014 (hereinafter "Second Case").

On March 24, 2014, Appellant, through counsel, filed an omnibus pretrial motion in the First Case, seeking, *inter alia*, to suppress all incriminating evidence. In support of suppression, Appellant alleged that the police lacked probable cause to arrest him without a warrant. He also alleged that the police lacked probable for the issuance of a search warrant for the vehicle. The trial court disagreed, denying, among other things, Appellant's suppression motion following a hearing. The court concluded that probable cause existed to arrest Appellant and to issue the search warrant for the vehicle. In so doing, the trial court rendered detailed findings:

1. On the date of the robbery, at approximately 2:14 p.m., Colonial Regional Police received notification that an armed robbery took place at Wunderler's Market in Bath, Pennsylvania;

2. Detective Sergeant Melinsky responded to the scene along with other patrol vehicles and interviewed the victims and the owners of the market, Joyce and Donald Wunderler;

- 3 -

3. The victims provided information to Detective Melinsky that included a description of the perpetrator who brandished a black semiautomatic handgun, was wearing a black jacket with a grey hoodie, was approximately 6 foot tall and approximately 175 pounds. The perpetrator was a white male. The Wunderlers handed the robber approximately $100 in cash in small bills;

4. Detective Sergeant Melinsky obtained video footage from the surveillance cameras within the market and reviewed the footage. He was able to view images of the perpetrator of the robbery which matched the description provided by the victims;

5. Detective Sergeant Melinsky was also able to view on the surveillance videotape the perpetrator walk into the store, point the gun at the victims, and commit the robbery. He was also able to view the perpetrator flee out the door of the market;

6. Later at the station, Detective Sergeant Melinsky again reviewed the videotape and, in fact, viewed the videotape at least five or six times. Each viewing included images of the perpetrator;

7. Detective Sergeant Melinsky and other members of the Colonial Regional Police Department obtained a still shot of the perpetrator from the surveillance videotape and disseminated it to police and to the media. The still shot photograph was admitted as Commonwealth's Exhibit 1 and depicted a white male in a gray hooded sweatshirt, which matched the description provided by the victims;

8. Later in the day on the afternoon of the robbery, Officer Kovalosky received a call from a witness named Michael Flyte who had been in the area of the market at the time of the robbery. Michael Flyte had prepared a written statement of his own accord and provided written information to the police detailing what he observed with respect to the robbery;

9. Michael Flyte provided information to police that he saw a beige four-door Toyota Camry with front end vehicle damage near the headlight pull in quickly to a parking place near the market. The vehicle ran a stop sign in so doing;

10. Michael Flyte witnessed a male get out of the car and walk down an alley towards the market;

11. Approximately several minutes later, Michael Flyte witnessed the male return from the market. It was a white male, wearing a gray hoodie and black jacket. Michael Flyte's description matched that of the perpetrator as provided by the victims, and as depicted on the video;

12. Detective Sergeant Melinsky showed the still shot photograph obtained from the surveillance video to Michael

Flyte. Michael Flyte confirmed that was the male that he had observed;

13. Michael Flyte also provided police with information that the [male's] vehicle contained a distinctive sticker in the rear window. It was a heart shaped sticker decal outlined in pink with zebra stripes;

14. Detective Sergeant Melinsky conducted research on the sticker and was able to obtain a computer image of the sticker which Michael Flyte confirmed was similar to the image he saw on the car;

15. At approximately 1 a.m. the next morning, Detective Sergeant Melinsky received a telephone call from Sergeant Enstrom of the Colonial Regional Police indicating that Mr. Enstrom observed a four-door beige Toyota Camry with a sticker matching the description provided by Michael Flyte parked in Bath near the Daily Grind Coffee Shop, and near the Fox Hotel/Gentlemen's Club;

16. Detective Sergeant Melinsky, Sergeant Enstrom, and other members of the police department conducted surveillance on the vehicle;

17. Prior to surveillance taking place, upon information believed, Sergeant Enstrom had observed a male approaching the vehicle. Sergeant Enstrom did not have backup with him at the time, and therefore, sought backup and surveillance was conducted of the vehicle;

18. Approximately 1:46 a.m. Detective Sergeant Melinsky observed a male walk out of the Fox Hotel, approach the car, open the back door of the car, and get in. The male matched the description of the perpetrator as provided by the victims and by Michael Flyte. The male was the same male depicted on the surveillance videotape and the still shot obtained therefrom. At which point, [Appellant] was arrested;

19. Detective Sergeant Melinsky indicated that he knew from the video that he had reviewed multiple times, from the still photograph, and from the description provided by the victims and Michael Flyte that the person getting into the car was the person who perpetrated the robbery;

20. [Appellant] was taken into custody and searched incident to arrest. Money was found in [Appellant's] pocket, including approximately eight $5 bills, and ten $1 bills;

21. The money found in [Appellant's] pocket is the subject of the motion to suppress. The motion to suppress the money is denied;

22. Subsequently, the vehicle was impounded, and a search warrant was obtained for its contents. During the search of the vehicle, a gun was found in the truck, which matched the description and depiction of the gun used in the robbery as described by the victims and as seen on the videotape. The gun found in the truck is the subject of the suppression motion. The suppression motion with respect to the gun and any other items found in the car pursuant to the search warrant is denied;

23. By way of further findings of fact that the arrest was supported by probable cause, the Commonwealth admitted Exhibits C-1 through C-5 depicting photos of [Appellant], which were consistent with the description provided by the victims of the perpetrator of the robbery; photographs of the vehicle, which were consistent with the description of the vehicle provided by the witness, Michael Flyte; photographs of the sticker on the rear of [Appellant's] vehicle, which were consistent with the description of the sticker provided by the witness Michael Flyte; and a photo of a hooded sweatshirt and black jacket found inside [Appellant's] vehicle;

24. In addition, Sergeant Enstrom testified consistently with the testimony of Detective Sergeant Melinsky regarding the incidents surrounding [Appellant's] arrest;

25. Detective Gary Hammer also testified consistently with Detective Sergeant Melinsky concerning the incidents surrounding [Appellant's] arrest;

26. The [trial] court finds, not only that the arrest was supported by sufficient probable cause, but that the probable cause to arrest [Appellant] was overwhelming.

Trial Court Opinion, 6/17/14. Prior to trial, the Commonwealth moved to consolidate the cases at docket numbers 4211-2013 and 435-2014.[2] The trial court granted the consolidation motion. Following a jury trial, Appellant was convicted of robbery, two counts of simple assault, theft by unlawful taking, and receiving stolen property in the First Case. The trial court

_____

[2] Alternatively, the Commonwealth provided Appellant notice under Pa.R.E. 404(b) (bad acts) of its intention to introduce evidence of the First Case in the Second Case and vice versa. The Commonwealth, however, withdrew the Rule 404(b) notice at trial. *See* N.T. Trial, 6/3/14, at 39.

sentenced Appellant to 90 to 240 months' imprisonment for the armed robbery conviction. The sentence included a mandatory minimum sentence of 60 months' imprisonment under 42 Pa.C.S.A. § 9712, relating to sentences for offenses committed with firearms. The trial court imposed no further penalty on the remaining convictions in the First Case. In the Second Case, the jury found Appellant guilty of escape, and the trial court imposed a sentence of 27 to 84 months' imprisonment consecutive to the sentence imposed in the First Case. Thus, Appellant received an aggregate sentence of 117 to 324 months in prison.

On September 12, 2014, Appellant filed a post-sentence motion, challenging, *inter alia*, the denial of suppression, the consolidation of the cases, and the in-court identification of Appellant. The trial court denied the motion on January 5, 2015. Appellant timely appealed to this Court.[3]

On appeal,[4] Appellant essentially raises three issues for our review:

> 1) Did the trial court err by denying the [m]otion to [s]uppress [e]vidence in the instant matter?

_____

[3] Following the filing of the appeal notice, Appellant petitioned the trial court to proceed *pro se*. The trial court held a hearing at which it colloquied Appellant on his decision to represent himself. On March 6, 2015, the trial court granted Appellant's petition to proceed *pro se*.

[4] We note Appellant's pre-sentence investigation report is part of the original record. It should be noted that pursuant to Pa.R.Crim.P. 703 a pre-sentence investigation report is "confidential, and not of public record," which is available only to the authorities or the individuals listed therein. **See** Pa.R.Crim.P. 703. Accordingly, the Northampton County Clerk of Courts should take all necessary steps to preserve the confidential nature of the pre-sentence investigation report by sealing it.

2) Did the trial court err by improperly consolidating the criminal informations?

3) Did the trial court err by allowing irrelevant evidence relating to the consciousness of guilt in violation of Pa.R.E. 404(b)(2)?

Appellant's Brief at 5. To the extent Appellant argues that the trial court (a) erred in deciding his pretrial omnibus motion prior to the commencement of trial in violation of Pa.R.Crim.P. 580; (b) erred by allowing improper in-court identification evidence to be introduced and admitted at trial; and (c) abused its discretion by imposing a manifestly excessive sentence, such arguments are waived. Appellant failed to challenge the trial court's timing for disposing of the omnibus motion in the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Our review of the record reveals that Appellant failed to object to his in-court identification by Joyce Wunderler. *See* N.T. Trial, 6/3/14, 101-02. Finally, as the Commonwealth points out, Appellant cannot challenge the discretionary aspects of his sentence on appeal because he failed to do so in a post-sentence motion before the trial court. It is settled that "[i]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) (citation omitted), *appeal denied*, 75 A.3d 1281 (Pa. 2013). Even if these issues were not waived, we still would conclude that Appellant is not entitled to

relief based on the reasons outlined in the trial court Rule 1925(a) opinion, which we fully adopt.

In reviewing appeals from an order denying suppression, our standard of review is limited to determining

> whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct. When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the [trial] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Griffin*, 116 A.3d 1139, 1142 (Pa. Super. 2015) (citation omitted). Our scope of review is limited to the evidence presented at the suppression hearing. *In the interest of L.J.*, 79 A.3d 1073, 1088-89 (Pa. 2013).

After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the trial court's 1925(a) opinion authored by the Honorable Jennifer R. Sletvold, cogently disposes of Appellant's issues on appeal. *See* Trial Court Rule 1925(a) Opinion, 3/26/15, at 3-19. With respect to the first issue, the trial court concluded, based upon its findings detailed *supra*, that it did not err in denying Appellant's suppression motion because probable cause to arrest was overwhelming to support his arrest and the resulting search of his person and vehicle. On the second issue, the trial court determined that it did not abuse its discretion in consolidating the cases for trial because they were

interrelated. As for the third issue, the trial court determined that the Commonwealth withdrew at trial its notice to introduce evidence under Rule 404(b).[5] The trial court noted that the Commonwealth was permitted to argue to the jury that Appellant's flight from the preliminary hearing was indicative of a consciousness of guilt.

Lastly, as mentioned earlier, and confirmed by our review of the sentencing transcript, sentencing order and related documents, the trial court imposed upon Appellant a mandatory minimum sentence under Section 9712 in the First Case. Specifically, Appellant received a mandatory minimum sentence of 60 months' imprisonment for armed robbery. However, in light of our recent decision in **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014), **appeal denied**, 124 A.3d 309 (Pa. 2015), we must vacate the sentence for robbery in the First Case and remand for resentencing in the First Case.

In **Valentine**, the defendant had been convicted by a jury of robbery and sentenced to 5–10 years' imprisonment, which included, *inter alia*, a mandatory minimum sentence under Section 9712. **Valentine**, 101 A.3d at 804–05. We addressed specifically the constitutionality of Section 9712, the

---

[5] Rule 404(b)(3) provides that "[i]n a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial." Pa.R.E. 404(b)(3).

same mandatory minimum statute that the trial court applied instantly. We held that the statute was facially unconstitutional. *Id.* at 812; *accord Commonwealth v. Ferguson*, 107 A.3d 206, 216 (Pa. Super. 2015). Our decision in *Valentine* was rooted in *Alleyne v. United States*, 133 S. Ct. 2151, 2161-63 (2013) (holding that any fact other than a prior conviction that triggers a mandatory minimum sentence must be found by a jury beyond a reasonable doubt), and this Court's decision in *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014) (*en banc*) (concluding that the appellant's sentence was illegal and striking down 42 Pa.C.S.A. § 9712.1 as unconstitutional). Accordingly, we must conclude that the trial court imposed an illegal sentence when it sentenced Appellant under Section 9712 for the robbery conviction in the First Case.

In sum, we affirm Appellant's convictions in both cases. We also affirm Appellant's sentence with respect to the Second Case, but vacate and remand for resentencing in the First Case. We direct that a copy of the trial court's March 26, 2015 Rule 1925(a) opinion be attached to any future filings in this case.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary


Date: 3/15/2016



**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**CRIMINAL DIVISION**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | **No.** **443 EDA 2015** |
| vs. | **Trial Court No.:** |
| **DANIEL PREZIOSI,** | **CR-4211-2013** |
| **Appellant.** | **CR-435-2014** |

FILED 2015 MAR 26 PM 1:30 CLERK OF COMMON PLEAS CRIMINAL DIVISION NORTHAMPTON COUNTY, PA

**MEMORANDUM OPINION**

### I.      Introduction

This Memorandum Opinion is filed in accordance with Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. Following a two-day jury trial before the undersigned judge on June 3, 2014 and June 4, 2014, the Appellant, Daniel Preziosi (hereinafter, "Appellant"), was found guilty of one count of Robbery in violation of 18 Pa.C.S.A. 3701(a)(3), a felony of the first degree; two counts of Simple Assault in violation of 18 Pa.C.S.A. 2701(a)(3), a misdemeanor of the second degree; Theft by Unlawful Taking in violation of 18 Pa.C.S.A 3921(a), a misdemeanor of the second degree; Receiving Stolen Property in violation of 18 Pa.C.S.A. 3925(a), a misdemeanor of the second degree; and Escape in violation of 18 Pa.C.S.A. 5121(a), a felony of the third degree. Appellant was convicted of these crimes, which arose out of his role in an armed robbery of Wunderler's Market in Bath, Pennsylvania on October 18, 2013 as well as his December 16, 2013 escape from his preliminary hearing on the charges stemming from the October 18, 2013 robbery. For purposes of trial, the charges filed pursuant to the events that

72

occurred on October 18, 2013, docketed under case number CR-4211-2013, were consolidated with the charges filed pursuant to the events that occurred on December 16, 2013, docketed under case number CR-435-2014. At trial, Attorney Christopher Shipman represented Appellant on all charges filed under case number CR-4211-2013, and Attorney Anthony Rybak represented Appellant on the escape charge filed under case number CR-435-2014.[1]

This Court sentenced Appellant on September 5, 2014 as follows: 1) for the charge of Robbery, Appellant was sentenced to ninety (90) months to two hundred forty (240) months of incarceration; 2) for the charge of Escape, Appellant was sentenced to a consecutive period of incarceration of twenty-seven (27) to eighty-four (84) months; and 3) the counts of Simple Assault, Theft by Unlawful Taking, and Receiving Stolen Property charges were merged into the Robbery counts for purposes of sentencing.

On September 12, 2014, Appellant filed the following post-sentence motions: "Denial of Motion to Suppress Evidence," "Improper Consolidation of Cases," "In Court Identification of the Defendant," "Denial of Motion for Mistrial," and "Motion for Transcription." This Court denied these motions on January 5, 2015. Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania on February 4, 2015. Thereafter, on March 10, 2015, Appellant filed a *Pro Se* Statement of Matters Complained of on Appeal pursuant to Pa.R.Civ.P. 1925(b).

## II.    Matters Complained of on Appeal

In his Statement of Matters Complained of on Appeal, Appellant contends that this Court erred as a matter of law and/or fact, stating the following as issues in error:

---

[1] Post trial, Appellant filed a Petition to have Attorney Rybak excused as his counsel, which petition this Court granted on November 26, 2014. It was further ordered that Attorney Shipman would remain as Appellant's counsel with respect to all convictions that arose from both case numbers. Subsequently, on February 13, 2015, Appellant filed a Petition to Proceed Pro Se. Following a hearing, this Court granted Appellant's Petition and Appellant now proceeds pro se.

2

A. "The trial Court erred by denying the Motion to Suppress Evidence in the instant matter";

B. "The trial Court erred by failing to resolve Omnibus Pre-trial Motions prior to the commencement of trial in violation of Pa.R.Crim.P. 580";

C. "The trial Court erred by allowing improper identification evidence to be admitted during trial";

D. "The trial Court erred by improperly consolidating the criminal informations";

E. "The trial Court erred by allowing irrelevant evidence relating to consciousness of guilt in violation of Pa.R.E. 404(B)(2)";

F. "The trial Court erred by not Ordering a mistrial given that the Jury Foreman was sleeping and defense counsel lodged an Objection";

G. "The trial Court abused its discretion by imposing a manifestly excessive sentence."

We will address Appellant's statements of matters complained of on appeal as he has presented them below.

### III. Discussion

#### *1. "The trial Court erred by denying the Motion to Suppress Evidence in the instant matter"*

Prior to Appellant's trial, Appellant's attorney, Christopher Shipman, Esquire, raised a Motion to Suppress Evidence in which he asserted that Appellant's warrantless arrest lacked probable cause, and as a result, all evidence seized during the search incident to arrest and all evidence seized from his vehicle pursuant to a search warrant thereafter obtained was fruit of the poisonous tree. This Court conducted a Suppression Hearing on June 2, 2014 and June 3, 2014. Thereafter, this Court denied Appellant's Motion, finding that the probable cause to arrest the Appellant was "overwhelming."

The test used to determine if probable cause exists for issuing a warrant is whether under the totality of the circumstances "there is a fair probability that contraband or evidence of a crime

3

will be found at a particular place." *Com. v. Glass*, 562 Pa. 187, 754 A.2d 655 (2000).

Similarly, probable cause to arrest exists when "the facts and circumstances which are within the

knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy

information, are sufficient to warrant a man of reasonable caution in the belief that the suspect

has committed or is committing a crime." *Com. v. Williams*, 2 A.3d 611, 616 (Pa.Super. 2010)

(en banc). Absent some statutory provision to the contrary, a warrantless arrest must be

supported by probable cause to believe that "(1) a felony has been committed; and (2) the person

to be arrested is the felon." *Id.* at 624.

The findings of fact and reasoning in support of this Court's denial of Appellant's Motion to

Suppress Evidence are found in this Court's Order of June 3, 2014 and are as follows:

1) On the date of the robbery, at approximately 2:14 p.m., Colonial Regional Police received notification that an armed robbery took place at Wunderler's Market in Bath, Pennsylvania;

2) Detective Sergeant Melinsky responded to the scene along with other patrol vehicles and interviewed the victims and the owners of the market, Joyce and Donald Wunderler;

3) The victims provided information to Detective Sergeant Melinsky that included a description of the perpetrator who brandished a black semiautomatic handgun, was wearing a black jacket with a gray hoodie, was approximately 6 foot [sic] tall and approximately 175 pounds. The perpetrator was a white male. The Wunderlers handed the robber approximately $100 in cash in small bills;

4) Detective Sergeant Melinsky obtained video footage from the surveillance cameras within the market and reviewed the footage. He was able to view images of the perpetrator of the robbery which matched the description provided by the victims;

5) Detective Sergeant Melinsky was also able to view on the surveillance videotape the perpetrator walk into the store, point the gun at the victims, and commit the robbery. He was also able to view the perpetrator flee out the door of the market;

6) Later at the station, Detective Sergeant Melinsky again reviewed the videotape and, in fact, viewed the videotape at least five or six times. Each viewing included images of the perpetrator;

7) Detective Sergeant Melinsky and other members of the Colonial Regional Police Department obtained a still shot of the perpetrator from the surveillance videotape and disseminated it to police and to the media. The still shot photograph was admitted as Commonwealth Exhibit 1 and depicted a white male in a gray hooded sweatshirt, which matched the description provided by the victims;

4

8) Later in the day on the afternoon of the robbery, Officer Kovalosky received a call from a witness named Michael Flyte who had been in the area of the market at the time of the robbery. Michael Flyte had prepared a written statement of his own accord and provided written information to the police detailing what he observed with respect to the robbery;

9) Michael Flyte provided information to police that he saw a beige four-door Toyota Camry with front end vehicle damage near the headlight pull in quickly to a parking place near the market. The vehicle ran a stop sign in so doing;

10) Michael Flyte witnessed a male get out of the car and walk down an alley towards the market;

11) Approximately several minutes later, Michael Flyte witnessed the male return from the market. It was a white male, wearing a gray hoodie and black jacket. Michael Flyte's description matched that of the perpetrator as provided by the victims, and as depicted on the video;

12) Detective Sergeant Melinsky showed the still shot photograph obtained from the surveillance video to Michael Flyte. Michael Flyte confirmed that was the male that he had observed;

13) Michael Flyte also provided police with information that the vehicle contained a distinctive sticker in the rear window. It was a heart shaped sticker decal outlined in pink with zebra stripes;

14) Detective Sergeant Melinsky conducted research on the sticker and was able to obtain a computer image of the sticker which Michael Flyte confirmed was similar to the image he saw on the car;

15) At approximately 1 a.m. the next morning, Detective Sergeant Melinsky received a telephone call from Sergeant Enstrom of the Colonial Regional Police indicating that Mr. Enstrom observed a four-door beige Toyota Camry with a sticker matching the description provided by Michael Flyte parked in Bath near the Daily Grind coffee shop, and near the Fox Hotel/Gentlemen's Club;

16) Detective Sergeant Melinsky, Sergeant Enstrom, and other members of the police department conducted surveillance on the vehicle;

17) Prior to surveillance taking place, upon information believed, Sergeant Enstrom had observed a male approaching the vehicle. Sergeant Enstrom did not have backup with him at that time, and therefore, sought backup and surveillance was conducted of the vehicle;

18) Approximately 1:46 a.m., Detective Sergeant Melinsky observed a male walk out of the Fox Hotel, approach the car, open the back door of the car, and get in. The male matched the description of the perpetrator as provided by the victims and by Michael Flyte. The male was the same male depicted on the surveillance videotape and the still shot obtained therefrom. At which point, the defendant was arrested;

19) Detective Sergeant Melinsky indicated that he knew from the video that he had reviewed multiple times, from the still photograph, and from the description provided by the victims and Michael Flyte that the person getting into the car was the person who perpetrated the robbery;

20) The defendant was taken into custody and searched incident to arrest. Money was found in the defendant's pocket, including approximately eight $5 bills and ten $1 bills;

5

21) The money found in the defendant's pocket is the subject of the motion to suppress. The motion to suppress the money is denied;

22) Subsequently, the vehicle was impounded, and a search warrant was obtained for its contents. During the search of the vehicle, a gun was found in the trunk, which matched the description and depiction of the gun used in the robbery as described by the victims and as seen on the videotape. The gun found in the trunk is the subject of the suppression motion. The suppression motion with respect to the gun and any other items found in the car pursuant to the search warrant is denied;

23) By way of further findings of fact that the arrest was supported by probable cause, the Commonwealth admitted Exhibits C-1 through C-5 depicting photos of the defendant, which were consistent with the description provided by the victims of the perpetrator of the robbery; photographs of the vehicle, which were consistent with the description of the vehicle provided by the witness, Michael Flyte; photographs of the sticker on the rear of the defendant's vehicle, which were consistent with the description of the sticker provided by the witness Michael Flyte; and a photo of a hooded sweatshirt and black jacket found inside the defendant's vehicle;

24) In addition, Sergeant Enstrom testified consistently with the testimony of Detective Melinsky regarding the incidents surrounding the defendant's arrest;

25) Detective Gary Hammer also testified consistently with Detective Sergeant Melinsky concerning the incidents surrounding the defendant's arrest;

26) The Court finds, not only that the arrest was supported by sufficient probable cause, but that the probable cause to arrest the defendant was overwhelming.

Based on the testimony and the foregoing findings of fact, it is exceedingly clear that probable cause existed both to arrest Appellant and to support the issuance of the search warrant for the content of Appellant's vehicle. Therefore, Appellant's contention that this Court erred by denying the Motion to Suppress Evidence is without merit.

2. *"The trial Court erred by failing to resolve Omnibus Pre-trial Motions prior to the commencement of trial in violation of Pa.R.Crim.P. 580"*

Neither Appellant nor his counsel raised a claim orally on the record, in a pre-sentence motion, or in a post-sentence motion, that the Court failed to resolve any outstanding omnibus pre-trial motions. Because it is axiomatic that a party cannot raise this issue for the first time on appeal, this claim is waived. *See* Pa.R.A. P. 302(a).

Even if the Appellate Court were to consider this issue, this Court did rule on all outstanding omnibus pre-trial motions presented by counsel for both parties. The only Omnibus Pre-trial

6

Motions raised by Appellant's counsel were the Motion to Suppress Evidence, discussed *supra*, and a Motion to Compel Discovery, which specifically requested the Court to order the Commonwealth to produce a color copy of any photographic lineup created by the Police.

As previously discussed, this Court did dispose of Appellant's Motion to Suppress Evidence. Importantly, with respect to this Motion, Attorney Shipman conceded that the only items that he sought to be suppressed were those seized from Appellant's car. The following discussion took place on the record:

> **Ms. Lewis:** Three search warrants in this case. There was one for room 14 at the Fox bar, there was one for a Toyota Camry, and also one for Northampton County Prison to get an article of clothing that the defendant wore when he was apprehended. The first warrant pertained to room 14. The Commonwealth is not seeking to use it. There's no evidence collected so I'll not even begin challenging it because there's nothing to be used.
>
> **Mr. Shipman:** Correct.
>
> **Ms. Lewis:** The third search warrant, I believe, was gathered completely separately later in time. The only reason we would highlight it is it wasn't the sweatshirt that was on the video but we don't intend to reference to it besides that. That's just a distinguishing two sweatshirts. It's not being challenged in that regard. Do you still need a ruling on the third search warrant?
>
> **Mr. Shipman:** No. The only items we are focusing on were the ones that were seized from the car.

*See* Notes of Testimony ("N.T.") 6/2/14 at 6:6-25 and 7:1-4.

Further, before the start of testimony during the Suppression Hearing, the Court confirmed with Appellant's counsel which issue remained outstanding with respect to the Appellant's Motion to Suppress evidence:

> **The Court:** Mr. Shipman, just frame the issue for me. As I understand it from your motion, the only issue left in your motion to suppress is that police lacked sufficient reason to arrest the defendant without a warrant when they observed him near the getaway vehicle on October 19, 2013. Therefore, any evidence obtained from him as a result of his arrest must be suppressed, is that it?

7

**Mr. Shipman:** That's correct...We're focusing on two items. There was a photo lineup that was done after his arrest is no longer an issue because the Commonwealth has agreed not to use that. The other item there were some cash denominations found, which the victim indicated proximate that which was taken from them, and there is a firearm that's actually a BB gun but it's a black firearm and that was taken from the vehicle.

*Id.* at 9:18-25 and 10:1-13. As evidenced by the foregoing, this Court ruled on all outstanding issues in Appellant's Motion to Suppress Evidence.

With regard to Appellant's Motion to Compel Discovery, counsel for both Appellant and the Commonwealth agreed that this Motion was moot. Assistant District Attorney Kelly Lewis stipulated that the Commonwealth would not be offering as evidence the two photo identification lineups at issue. Because these photo lineups were not going to be used during trial, the Appellant's Motion to Compel these photo lineups was moot. Appellant's counsel agreed as evidenced by the following discussion of record:

> **Ms. Lewis:** Essentially, there were two photo identification lineups that were presented to each victim in this case. The Commonwealth is stipulating that we're not going to be offering them as evidence at all in this case. So they will not be challenged because they're not going to be used.
>
> **The Court:** The demand on the color photo lineup is withdrawn.
>
> **Mr. Shipman:** I did receive it. But if all that's moot, that wouldn't be the subject of the motion to suppress.
>
> ...
>
> **Mr. Shipman:** ...The only items we are focusing on were the ones that were seized from the car.
>
> **The Court:** Okay. That's what we'll focus the hearing on, and that's the portion of the omnibus motion that I will rule on. The rest has been disposed of, as I understand.
>
> **Mr. Shipman:** That's correct. The rest of it would be moot.
>
> **Ms. Lewis:** Just so Your Honor is aware, we'll be offering a copy of the actual search warrant when we begin the hearing. I believe it's the second to last paragraph does speak specifically to the photo lineup. Obviously, the Commonwealth is not using that so we would remove that, and we believe that the second to last paragraph of the search warrant for

8

the Toyota Camry does make reference to the photo lineup which the Commonwealth has previously stipulated. We will not be using in this case.

*Id.* at 5:19-25; 6:1-5; 7:2-23. Because the Commonwealth stipulated that it would not be introducing the subject photo lineup into evidence, Appellant's Motion to Compel Discovery was moot at the time of trail. Appellant's attorney agreed that this Motion was moot. As such, this Court did not err by failing to rule on a moot issue.

The Commonwealth also presented pre-trial motions and/or other matters which were disposed of prior to trial. Specifically, the Commonwealth presented a "Notice Pursuant to Pa.R.E. 404(b)," which was subsequently withdrawn, and a "Motion of the Commonwealth to Join Separate Informations for Trial," which this Court considered and granted.

### 3. *"The trial Court erred by allowing improper identification evidence to be admitted during trial"*

This statement of error fails to comply with Pa.R.App.P. 1925(b)(4)(ii) in that it does not provide sufficient detail to identify the statements in question. As a result, this Court is unable to properly address this vague statement of error.

Nevertheless, if in this statement of error, Appellant seeks to raise the same issue which was raised by his prior counsel in a post-sentence motion, we maintain that this issue has no merit. In his post-sentence motion, Appellant's counsel, Mr. Shipman, raised the issue of whether the Court committed "reversible error when it permitted a tainted in-court identification of the Defendant by Joyce Wunderler." Appellant argued in his post-sentence motion that Joyce Wunderler's in-court identification of Appellant was tainted because it had no basis independent of the pre-trial photographic lineup that the Commonwealth agreed not to introduce at trial.[2]

---

[2] Joyce Wunderler previously identified Appellant by way of an uncounseled pre-trial photographic lineup. (Appellant's Brief in Support of Post-Sentence Motions at p. 6). However, Counsel for the Commmonwealth stated

As Appellant asserts in his brief in support of his post-trial motion, it is well established that despite a witness's participation in an uncounseled pre-trial identification procedure, such as the photo lineup in the case *sub judice*, the witness's in-court identification may be admitted as long as the Commonwealth establishes by clear and convincing evidence that the in-court identification has a basis independent of the pre-trial confrontation. *Com. v. McIntosh*, 476 A.2d 1316 (Pa. Super. 1984). The factors to be considered in determining if the in-court identification was based on the witness's observations at the time of the robbery and thus had a basis independent of the photo lineup are:

> (1) the witness' opportunity to observe the criminal act; (2) the existence of any discrepancy between the witnesses' prior description of the criminal and the defendant's actual appearance; (3) any identification of anyone other than the defendant; (4) any failure to identify defendant; and (5) the lapse of time between the crime and the identification.

*Id*. at 1319.

As to Joyce Wunderler, the evidence clearly establishes the existence of an independent basis for in-court identification. She testified that she was able to observe Appellant on October 18, 2013 when he came into her store at approximately 2:00 p.m. (N.T. 6/3/14 at 97:15-23). She observed Appellant as she was trying to hit the silent alarm under the counter where she was sitting, and she was able to observe Appellant more closely when she got up to open the register and hand Appellant money over the counter. (*Id*. at 98:4-19). She testified that she was constantly staring at Appellant while attempting to press the silent alarm. Also, when handing Appellant the money, she was no more than two feet away from the Appellant. (*Id*. at 98:4-7; 102:4-8). Mrs. Wunderler recalled that when she observed Appellant during the robbery, he was unmasked and was wearing a dark jacket with a light colored hoodie underneath; the hood of the hoodie was pulled up onto his head. (*Id*. at 99:10-25; 102:13-16). Moreover, Detective Sergeant

---

that they agreed not to use this photo lineup at trial because it was believed that the photo lineup was not conducted properly. (N.T. 6/2/14 at 8:2-6).

Melinsky testified that he received information directly from Mrs. Wunderler regarding the description of Appellant. (N.T. 6/2/14 at 13:11-25). Detective Sergeant Melinsky testified that Mrs. Wunderler also described Appellant to him as an individual wearing a black jacket with a gray hoodie that was up over his head. (*Id.* at 13:15-21). Detective Sergeant Melinsky further testified that this description of Appellant was consistent with the video surveillance, which he viewed several times. (*Id.* at 26:13-17 and 28:3-7).

Based on her recollection of Appellant as being the individual who came into her store on October 18, 2013, Mrs. Wunderler identified the Appellant in the courtroom and explained that she had identified him upon first walking into the courtroom on the morning of trial. (N.T. 6/3/14 at 100:1-4; 101:14-25). Mrs. Wunderler also testified as to surveillance footage from her store from October 18, 2013, which footage she previously provided to the police. (*Id.* at 105:13-25). According to Mrs. Wunderler's recollection, she testified that the video was a fair and accurate representation of what occurred at her store on October 18, 2013. (*Id.* at 106:2-5). While viewing the video in the presence of the jury, Mrs. Wunderler explained to the jury that it was Appellant who walked into the store and shook a gun at her and her husband, demanding money from the register. (*Id.* at 107:3-25).

It is clear that an independent basis existed for Mrs. Wunderler's in-court identification of Appellant given: 1) the time of day during which the robbery occurred; 2) the fact that Mrs. Wunderler had a close, unobstructed view of Appellant, who was unmasked, during the robbery; 3) that the robbery was a circumstance likely to focus Mrs. Wunderler's attention upon Appellant; 4) a lack of any evidence that shows that Mrs. Wunderler failed to identify Appellant; and 5) a lack of any evidence that shows that Mrs. Wunderler identified anyone other than

11

Appellant as the individual who robbed her store on October 18, 2013. See *McIntosh*, supra. Therefore, Appellant's statement of error is without merit.

### 4. *"The trial Court erred by improperly consolidating the criminal informations"*

Appellant was charged with two separate Criminal Informations. Criminal Information 4211-2013 was filed on February 6, 2014, and Criminal Information 435-2014 was filed on April 3, 2014. The Appellant's action of escaping from his preliminary hearing in Case 4211-2013 was the basis for the charge in Case 435-2014.

"The grant or denial of severance or the consolidation of charges for trial is a matter of discretion with the trial judge, and his decision will be reversed only for manifest abuse of discretion, or prejudice to the defendant." *Com. v. Peppers*, 515 A.2d 971, 973 (Pa. Super. 1986). Pennsylvania Rule of Criminal Procedure 582 (A) permits Criminal Informations to be joined for trial if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion" or "the offenses charged are based on the same act or transaction." Pa. R. Crim. P. 582(A).

In this case, the Commonwealth indicated its intent to introduce Appellant's escape, which was brought under Case 435-2014, in order to show his consciousness of guilt with respect to the crimes charged in Case 4211-2013. Also, if Appellant was to have a separate trial on his escape charges, the fact that he was incarcerated for a robbery as a felony of the third degree and fled from official detention would be admissible per the elements of the crime of escape. See, 18 Pa.C.S.A. § 5121 (a), (d). Further, in *Commonwealth v. Peppers*, 515 A.2d 971 (Pa. Super. 1986), the Superior Court held that although the Commonwealth need only inform the jury of the general nature of the offense for which a defendant was being held at the time of

12

the escape, the introduction at trial of the specific offense for which appellant was being held is not unduly prejudicial. *Peppers*, 515 A.2d at 974.

Therefore, joinder of Appellant's two Criminal Informations, which were clearly interrelated, was proper. Not only would the evidence of each of the offenses be admissible in a separate trial for the other, but given the different elements of the offenses charged, the jury was also capable of separating the evidence so as to avoid confusion. Also, the Appellant had separate counsel for each information to fully and adequately represent his interests at trial. He had the benefit of two lawyers at trial, not just one. As such, this Court did not abuse its discretion in consolidating Defendant's charges for trial.

### 5. *"The trial Court erred by allowing irrelevant evidence relating to consciousness of guilt in violation of Pa.R.E. 404(B)(2)"*

The Commonwealth initially presented a pre-trial "Notice Pursuant to Pa.R.E. 404(b)," notifying Appellant of its intent to introduce Appellant's "bad acts" that occurred on December 16, 2013.[3] However, as indicated on the record, the attorney for the Commonwealth did not need to pursue any issue pertaining to 404(b)(2). *See* N.T. 6/3/14 at 38:21-25 and 39:1-21). The facts with respect to Appellant's escape were permitted at trial because, before the start of trial, the escape charge was consolidated with Appellant's other charges for trial. Clearly, the Commonwealth was permitted to present evidence to support the escape charge at trial without having to frame this evidence as "bad acts" pursuant to Pa.R.E. 404(b).

Further, the Commonwealth was permitted to argue to the jury that flight demonstrates Appellant's consciousness of guilt of the underlying crime because "it has long been the view in this Commonwealth that an attempt to escape police custody shows a consciousness of guilt."

---

[3] Under Pa.R.E. 404(b), evidence of "bad acts" may be used in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" only if the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2).

Also, "[w]hen a person knows that he is wanted in connection with a criminal investigation, and flees or conceals himself, such conduct is admissible as evidence of consciousness of guilt" and can be established through eyewitness testimony. *Com. v. Hudson,* 955 A.2d 1031 (Pa. Super. 2008); *see also Com. v. Green,* 76 A.3d 575 (Pa. Super. 2013) *appeal denied,* 87 A.3d 318 (Pa. 2014); *Com. v. Pestinikas,* 617 A.2d 1339 (Pa. Super. 1992); *Com. v. Paddy,* 569 Pa. 47, 800 A.2d 294 (2002); *Com. v. Coyle,* 415 Pa. 379, 203 A.2d 782 (1964); *Com. v. Tedford,* 523 Pa. 305, 567 A.2d 610 (1989).

A jury may infer that a defendant was aware of his fugitive status from the circumstances surrounding his flight. *Com. v. Rios,* 546 Pa. 271, 684 A.2d 1025 (1996). Additionally, case law with respect to this issue does not factor in any length of time between the underlying crime and the escape. *See Hudson, supra.* (Defendant's flight was admissible as evidence of consciousness of guilt when the date of the crime was December 6, 2001 and police did not locate Defendant until September 2004 at which time Defendant fled from police); *Com. v. Thompson,* 559 Pa. 229, 739 A.2d 1023 (1999) (Defendant's attempt to escape police custody was admitted to show consciousness of guilt when Defendant tried to conceal himself while awaiting his preliminary arraignment the day following his arrest). Appellant's counsel, Attorney Shipman, confirmed that he could not find any caselaw to the contrary. (N.T. 6/4/14 at 79:1-15).

Therefore, the facts surrounding Appellant's December 16, 2013 flight from his preliminary hearing on the underlying robbery charges obtained on October 18, 2013, were permitted to be heard at trial. Further, based on the relevant legal precedent, the Commonwealth was permitted to argue that Appellant's flight showed a consciousness of guilt.

14

### 6. "*The trial Court erred by not Ordering a mistrial given that the Jury Foreman was sleeping and defense counsel lodged an Objection*"

Appellant claims that the trial court erred by denying his pre-sentence motion for a new trial based on his assertion that the Jury Foreman was nodding off or sleeping during the charge of the Court. *See* N.T. 9/5/2014 at 5:6-11. However, we disagree with Appellant that any member of the jury nodded off or slept during any part of the charge to the jury. This Court, which is extremely cognizant of the alacrity of the jury during every trial before it, did not observe any member of the jury nodding off during this particular trial. Further, the record is completely devoid of any observation that a member of the jury was sleeping during the charge of the Court, and no such objection was placed on the record at the time of trial. Additionally, neither Appellant nor counsel for Appellant filed a timely motion regarding this issue. Instead, Appellant's then counsel, Attorney Rybak, made an oral motion for extraordinary relief pursuant to Pennsylvania Rule of Criminal Procedure 704 just before Appellant was about to be sentenced on September 5, 2014. *Id.* at 6:10-18.

Although Mr. Rybak made a motion pursuant to Rule 704, Appellant has failed to preserve his issue for appellate review because he did not file any post-trial motions with respect to same. Rule 704 of the Pennsylvania Rules of Criminal Procedure permits a trial judge to hear an oral motion for extraordinary relief prior to sentencing. Pa.R.Crim.P. 704(B)(1). In pertinent part, Rule 704 provides:

(B) Oral Motion for Extraordinary Relief.
(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.
(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.
(3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

15

Pa.R.Crim.P. 704. (emphasis in original). The Superior Court has held that "Rule 704 …

specifically declares that any motion for extraordinary relief must be preserved *via* a post-trial

motion." *Commonwealth v. Askew*, 907 A.2d 624, 627 (Pa. Super. 2006) (emphasis in original).

In applying Rule 704(B), the Superior Court has explained:

> The comment to the rule clarifies that a motion for extraordinary relief is neither
> necessary nor sufficient to preserve an issue for appeal. This Court has consistently held
> that we will not allow such motions as a 'substitute vehicle' for raising a matter that
> should be raised in a post-sentence motion.

*Id.* (internal citations, quotations, and footnotes omitted); *see also Com. v. Grohowski*,

980 A.2d 113, 115-16 (Pa. Super. 2009); *Com. v. Woods*, 909 A.2d 372, 378-79 (Pa.

Super. 2006). Rule 704 makes clear that the pre-sentence motion alone, which was raised by

Appellant's counsel, was neither necessary nor sufficient to preserve his issue for appeal to this

Court. *See Askew*, 907 A.2d at 627; *Howe*, 842 A.2d at 441; Pa.R.Crim.P. 704(B)(3), *comment.*

Because Appellant did not raise this issue at the time of trial and failed to file a post-

sentence motion with respect to this particular issue, he failed to preserve the issue for appeal.

*See Askew*, 907 A.2d at 627; *See also* Appellant's Post-Sentence Motions, 9/12/14. Appellant

raised this issue only in a verbal motion for extraordinary relief, and under Rule 704, any motion

for extraordinary relief must be preserved via a post-trial motion. Therefore, Appellant's motion

for extraordinary relief was insufficient to preserve the issue for appeal. *See Askew*, 907 A.2d at

627.

Even if Appellant preserved this issue for appeal, there would be no basis for a mistrial.

Our Superior Court has established that "Rule 704(B) is intended to allow the trial judge the

opportunity to address only those errors so manifest that immediate relief is essential."

*Grohowski*, 980 A.2d at 115. In this case, a new trial was not warranted in the interest of justice

under Rule 704(B).

16

The Superior Court has held that "[a] trial court has an 'immemorial right to grant a new trial, whenever, in its opinion, the justice of a particular case so requires.'" *Com. v. Dorm*, 971 A.2d 1284, 1288 (Pa. Super. 2009) (citing *Com. v. Powell*, 527 Pa. 288, 590 A.2d 1240, 1242 (1991)). "[T]he 'interest of justice' is a historically recognized basis for the award of a new trial." *Id.* at 1288. However, "[t]he granting of a new trial in the interest of justice cannot be arbitrary, but must be supported by the record." *Com. v. Riley*, 643 A.2d 1090, 1093 (Pa. Super. 1994). As discussed *supra*, nowhere in the record is there any mention of a member of the jury falling asleep. Therefore, based on the thorough record in the instant case as well as this Court's careful observation of the jury and independent recollection of the jury at the time of trial, the interest of justice would not be served whatsoever were the Court to grant a mistrial based on this issue.

### 7. *"The trial Court abused its discretion by imposing a manifestly excessive sentence"*

Primarily, we submit that the sentence imposed was within the proper sentencing guidelines. In fact, defense counsel confirmed that the guidelines submitted to the Court were correct. (N.T. 9/5/14 at pp.8-9). Counsel also confirmed that the Court could rely on Appellant's prior record score as set forth on the sentencing guideline forms. *Id.* at 7:14-18. Nevertheless, Appellant is arguing that the sentence was "manifestly excessive."

A claim for misapplication of sentencing guidelines constitutes a challenge to the discretionary aspects of a sentence. *Commonwealth v. Archer, 722 A.2d 203, 210 (Pa. Super. 1998)*. The standard of review of discretionary aspects of sentencing is an abuse of discretion. *Id.* at 211. "Discretion is abused when the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice,

17

bias or ill will." *Id.* (citing *Commonwealth v. Smith*, 545 Pa. 487, 681 A.2d 1288 (1996)); *See also* 42 Pa.C.S. § 9781(c).

We maintain that the statutory limits, as applied in this case, were proper. Under Pennsylvania's Sentencing Code, 42 Pa.C.S. § 9701 *et seq.,* a trial court must "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." *Commonwealth v. Ward,* 524 Pa. 48, 568 A.2d 1242, 1243 (1990); *See also,* 42 Pa.C.S. § 9721(b). At the time of Appellant's sentencing, the Court took into account the sentencing guidelines, the entire pre-sentence investigation, Appellant's psychological evaluation, Appellant's prior record score of five, the effect upon the victims and the community, the testamentary evidence at trial and at the time of sentencing, and various other relevant factors including Appellant's drug and alcohol abuse, the seriousness of the charges, and Appellant's failure to accept responsibility for them *See,* N.T., 9/5/14 at pp. 16-19. Taking all of those factors into consideration, the Court sentenced Appellant to an aggregate sentence of 117 to 324 months of incarceration. *Id.* at 19:15-17.

The Sentencing Guidelines with respect to the charge of robbery provide for a standard range sentence of 78 to 90 months of incarceration as a minimum with an aggravated range sentence of 102 months as a minimum and a mitigated range sentence of 66 months as a minimum. For this offense, the statutory maximum is 240 months or 20 years, and there is a mandatory minimum sentence of 60 months of incarceration. With respect to each charge of simple assault[4], the Sentencing Guidelines provide for a standard range sentence of 12 months as a minimum, and a mitigated sentence of 9 months as a minimum. The statutory maximum for this offense is 24 months. With respect to the charge of theft by unlawful taking, the Sentencing

---

[4] Appellant was charged with two counts of simple assault.

18

Guidelines provide for a standard range sentence of 7 to 12 months of incarceration as a minimum with a mitigated sentence of 6 months as a minimum. The statutory maximum for this offense is 24 months. With respect to the charge of receiving stolen property, the Sentencing Guidelines provide for a standard range sentence of 7 to 12 months of incarceration as a minimum with a mitigated sentence of 6 months as a minimum. The statutory maximum for this offense is 24 months. With respect to the charge of escape, the Sentencing Guidelines provide for a standard range sentence of 21 to 27 months of incarceration as a minimum with an aggravated range sentence of 33 months as a minimum and a mitigated range sentence of 15 months as a minimum. The statutory maximum for this offense is 84 months or 7 years. For sentencing purposes, Appellant's simple assault, theft by unlawful taking, and receiving stolen property counts were merged into the robbery counts.

Therefore, given the relevant Sentencing Guidelines, as well as Appellant's prior record score, the sentence that we imposed of 117 months to 324 months, or 9 years and 9 months to 19 years and 6 months, was appropriate and within the stated guideline ranges. As such, this statement of error is without merit.

## IV.    Conclusion

In conclusion and as indicated above, this Court did not err as a matter of law and/or fact in the matter *sub judice*, and Appellant's appeal should be denied.

BY THE COURT,

JENNIFER R. SLETVOLD, JUDGE

DATE: 31 *Jur/15*

19